[Cite as *State ex rel. Klein v. Precision Excavating & Grading Co.*, 2017-Ohio-1020.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. John Klein, | : | |
| Relator, | : | |
| v. | : | No. 15AP-908 |
| Precision Excavating & Grading Co., and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on March 21, 2017

**On brief:** *Richard L. Williger Co., LPA*, and *Richard L. Williger,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, John Klein, has filed a request for a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the April 21, 2015 order of its staff hearing officer that grants temporary total disability ("TTD") compensation for the closed period of November 6 through 19, 2014, but denies TTD compensation beginning November 20, 2014 based on a finding that relator has voluntarily abandoned his employment, and to enter an order that awards TTD compensation absent the finding that relator voluntarily abandoned his employment.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends to this court the granting of a limited writ of mandamus, with instructions.

{¶ 3} The magistrate found the commission abused its discretion in determining that relator voluntarily abandoned his employment on November 20, 2014 without determining whether relator remained medically unable to return to his former position of employment on that same date. Finding *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, to be dispositive, the magistrate found that "this case hinges on the question of whether relator medically remained unable to return to his former position of employment beginning November 20, 2014 [and that] [t]he commission did not fully evaluate Dr. Marley's Medco-14 because it believed that relator was ineligible for TTD compensation as of November 20, 2014." (Appended Magistrate's Decision at ¶ 51.)

{¶ 4} The magistrate recommended a limited writ of mandamus and ordered:

> On remand, if the commission determines that the medical evidence on which it relies establishes that relator remained unable to return to his former position of employment on November 20, 2014, it shall enter an order finding that relator did not voluntarily abandon his employment, and that he is entitled to further TTD compensation. On the other hand, if, on remand, the commission determines that the medical evidence on which it relies establishes that relator was able to return to his former position of employment as of November 20, 2014, it shall enter an order that relator became ineligible for TTD compensation as of November 20, 2014.

(Appended Magistrate's Decision at ¶ 52.)

{¶ 5} The commission has filed the following objection to the magistrate's decision:

> The Magistrate erred in granting a limited writ of mandamus pursuant to *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861 because, under *State ex rel. Hildebrand v. Wingate Transport Inc.*, 16 N.E.3 798, 2015-Ohio-167, as the commission had some evidence that Klein abandoned his employment for reasons unrelated to his industrial injury.

{¶ 6} The commission does not challenge the magistrate's findings of fact, but, rather, challenges his application of law to the facts. The commission argues that *Reitter Stucco* does not apply because in *Reitter Stucco* the claimant's loss of employment was employer-initiated. Whereas in the case before us, relator's loss of employment was worker-initiated. The commission suggests this court consider and apply *State ex rel. Hildebrand v. Wingate Transport, Inc.*, 141 Ohio St.3d 533, 2015-Ohio-167.

{¶ 7} In *Reitter Stucco*, Tony A. Mayle, the injured worker, had surgery and undertook physical therapy. Although Mayle was a conscientious and dedicated participant in physical therapy and his goal was to improve enough to return to his former position of employment, his vocational team was unsure whether he would ever be capable of the physical demands of his former position of employment on a sustained basis. During this time, Reitter Stucco had been paying Mayle wages in lieu of TTD compensation. Nevertheless, Reitter Stucco stopped paying Mayle wages after he was fired for making comments about the company president. Mayle then applied for TTD compensation which the commission ultimately granted. The Supreme Court of Ohio denied Reitter Stucco's request for a writ of mandamus. The Supreme Court relied on the precedent it had set in *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996), and determined that "even if a termination satisfies all three *Louisiana-Pacific* criteria for being a voluntary termination, eligibility for [TTD] compensation remains if the claimant was still disabled at the time the discharge occurred." *Reitter Stucco* at ¶ 10, citing *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995). The Supreme Court further stated that if the criteria of *Louisiana-Pacific* is satisfied, suggesting that the termination was voluntary, "there must be consideration of whether the employee was still disabled at the date of termination." *Id.* at ¶ 11. The Supreme Court concluded that *Louisiana-Pacific* and *Pretty Prods.* are not mutually exclusive and they may both factor into the eligibility analysis.

{¶ 8} In *Hildebrand*, Brian J. Hildebrand, Jr., the injured worker, returned to work with a physician's note restricting him to modified duty. The employer spoke with Hildebrand to confirm he could return to light-duty work and, during the course of the conversation, the employer asked Hildebrand to return the keys to the vehicle the employer had previously loaned to him. According to the employer:

> Hildebrand became agitated and asked if he was being fired. [The employer] replied that he was not fired, but that it was time for him to stop using [the employer's] Jeep. Hildebrand became upset and began loading tools and equipment into the pickup truck of an owner-operator who drove for [the employer]. [The employer] returned to the work site and asked Hildebrand to stop so that he could identify the items being taken. When Hildebrand refused, [the employer] called the police. Hildebrand eventually cooperated with the police officers who responded, unloaded the items, and left the premises.

*Id.* at ¶ 6. The commission denied Hildebrand's request for TTD compensation on the basis that he had voluntarily quit his former position of employment and had not re-entered the workforce. The commission further found that the employer had been "ready, willing and able to offer light-duty employment" within Hildebrand's physical capabilities. *Id.* at ¶ 8. The Supreme Court denied Hildebrand's request for a writ of mandamus. The court began by noting that Hildebrand "does not appeal the finding that he voluntarily quit his job for reasons unrelated to his industrial injury." *Id.* at ¶ 14. The Supreme Court concluded:

> Because Hildebrand failed to demonstrate that his loss of earnings was due to the industrial injury, he did not meet that requirement for receiving [TTD] compensation.
>
> It is undisputed that evidence in the record supports that Hildebrand voluntarily quit his job following a disagreement with his employer that had nothing to do with his injury. This disagreement happened to occur shortly after he reported to work with a note from his doctor restricting him to modified duty. His departure was not causally related to the industrial injury. It was voluntary and broke the nexus between the injury and the unemployment; thus, he was not entitled to [TTD] compensation.

*Id.* at ¶ 21-22. The court further noted that *Hildebrand* could be distinguished from *Pretty Prods.* and similar cases that followed because in those cases each injured worker was already receiving TTD compensation when terminated from their employment and had therefore already demonstrated that he or she was disabled as a result of an industrial injury (which was the cause of a loss of earnings).

{¶ 9} The facts in the case before us are distinguishable from the facts in both *Reitter Stucco* and *Hildebrand*. Accordingly, it is difficult to determine which precedent should apply here. We do note, however, that here, as in *Reitter Stucco*, the injured worker had not yet returned to work on the date he departed for Florida, November 20, 2014. Dr. Marley indicated on the Medco-14 that the "[i]njured worker is temporarily not released to any work, including the former position of employment from (date): 11/5/2014 to 1/5/2015." (Stip. of Evidence, ex. 5 at 2.) In *Hildebrand*, on the other hand, the injured worker had returned to work, albeit in a restricted capacity. Furthermore, here, relator had already been receiving TTD compensation, as it was approved for the period November 6 through 19, 2014. Therefore, a determination had already been made that relator was disabled as a result of an industrial injury.

{¶ 10} In *Pretty Prods.*, the court held:

> The receipt of temporary total disability ("TTD") compensation rests on a claimant's inability to return to his or her former job as a direct result of an industrial injury. *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630 * * *, syllabus. However, eligibility may be compromised when the claimant is no longer employed at that job. Once a claimant is separated from the former position of employment, future TTD compensation eligibility hinges on the timing and character of the claimant's departure.
>
> The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred. *"[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal. State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48 * * *.

(Emphasis added.) *Id.* at 6-7.

{¶ 11} The Supreme Court recently reiterated this principle in *State ex rel. Cordell v. Pallet Cos., Inc.*, ___ Ohio St.3d ___, 2016-Ohio-8446. In *Cordell*, the injured worker, James F. Cordell, was injured on the job and taken to a hospital. At the hospital, a urine sample was collected and sent for toxicology screening. Cordell applied for TTD the following day. Six days later, the toxicology results showed that Cordell tested positive for

marijuana in violation of the employer's workplace policy. The employer terminated Cordell. Subsequently, the commission ultimately denied Cordell's request for TTD compensation, finding that "prior to the industrial injury [Cordell] voluntarily abandoned his employment" by using marijuana. *Id.* at ¶ 8. Cordell requested a writ of mandamus. The Supreme Court granted the writ and held:

> [P]ursuant to R.C. 4123.54 and 4123.56 and our decisions in [*State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916] *II* and *Reitter Stucco*, an employee who is medically incapable of returning to work as a result of a workplace injury and who is terminated after the injury for *preinjury conduct* that was discovered as a result of the injury has not voluntarily abandoned employment.

(Emphasis added.) *Id.* at ¶ 22.

{¶ 12} The case before us differs from *Cordell* in that relator herein did not violate a workplace policy prior to his industrial injury. Nevertheless, in *Cordell*, the court noted that "[t]here is no dispute that Cordell was injured while working for Pallet. Cordell's use of marijuana was not the proximate cause of his injury. When Cordell was terminated by Pallet, he had not returned to work, he had not been released by his doctor to return to work, he had not reached maximum medical improvement, and he was physically incapable of returning to work. Accordingly, under R.C. 4123.54 and 4123.56, Cordell was entitled to TTD benefits." *Id.* at ¶ 34.

{¶ 13} We note that the Supreme Court stated that *Cordell* is a case "about termination for violation of a work rule when the violation occurs before the injury and is discovered as a result of the injury." *Id.* at ¶ 36. That is not the situation we have here. Nevertheless, the facts which the Supreme Court found relevant to its determination in *Cordell* are also found in this case: (1) there is no dispute that relator was injured while working for respondent Precision Excavating & Grading Co., (2) relator's departure for Florida was not the proximate cause of his injury, (3) relator had not been released by his doctor to return to work, and (4) there was no indication that relator had reached maximum medical improvement. However, the commission did not consider whether relator was physically incapable of returning to work. To treat relator differently from *Cordell* would result in a precedent that claimants who violate workplace policies prior to injury are treated more favorably than claimants who did

not.  Given the Supreme Court's precedent in *Pretty Prods.* and *Reitter Stucco*, we do not construe the Supreme Court's precedent in *Cordell* as intending such a result. To reiterate, as the Supreme Court did in *Cordell*, " ' "[a] claimant can abandon a former position or remove himself or herself from the workforce only if he or she has the physical capacity for employment at the time of the abandonment or removal." ' "  *Id.* at ¶ 29, quoting *Pretty Prods.* at 7, quoting *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48 (1993).  Such principle is also consistent with the mandate in R.C. 4123.95 to liberally construe workers' compensation statutes in favor of employees.  Accordingly, the commission must determine whether relator herein remained medically unable to return to his former position of employment beginning November 20, 2014.

{¶ 14} On review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law.  We therefore overrule the commission's objection to the magistrate's decision and adopt the magistrate's decision, as modified herein, as our own, including the findings of fact and conclusions of law contained therein.  Accordingly, a limited writ of mandamus is hereby granted.  On remand, if the commission determines that the medical evidence on which it relies establishes that relator remained unable to return to his former position of employment on November 20, 2014, it shall enter an order finding that relator did not voluntarily abandon his employment, and that he is entitled to further TTD compensation.  On the other hand, if, on remand, the commission determines that the medical evidence on which it relies establishes that relator was able to return to his former position of employment as of November 20, 2014, it shall enter an order that relator became ineligible for TTD compensation as of November 20, 2014.

*Objection overruled;*
*limited writ of mandamus granted.*

TYACK, P.J., and BROWN, J., concur.

_____

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. John Klein, | : | |
| Relator, | : | |
| v. | : | No. 15AP-908 |
| Precision Excavating & Grading Co., and | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on September 23, 2016

*Richard L. Willinger Co., LPA,* and *Richard L. Willinger,* for relator.

*Michael DeWine,* Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 15} In this original action, relator, John Klein, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate the April 21, 2015 order of its staff hearing officer ("SHO") that grants temporary total disability ("TTD") compensation for the closed period November 6 through November 19, 2014, but denies TTD compensation beginning November 20, 2014, based on a finding that relator voluntarily abandoned his employment, and to enter an order that awards TTD compensation absent the finding that relator voluntarily abandoned his employment on November 20, 2014.

<u>Findings of Fact</u>:

{¶ 16} 1. On November 5, 2014, relator fractured two ribs while employed as a laborer for respondent, Precision Excavating & Grading Co. ("Precision Excavating"), a state-fund employer.

{¶ 17} 2. On the date of injury, relator was admitted to the "Trauma Surgery Service" at Akron General Health System. Relator was discharged from the hospital six days later on November 11, 2014. At the hospital, relator was under the care of Robert A. Marley, M.D. The hospital "Discharge Summary" reports:

> HISTORY OF PRESENT ILLNESS: This is a 52-year-old male, status post fall from an ATV. The patient stated he hit his right side after falling off the ATV. He denied hitting his head, and he denied any loss of consciousness. He complained of right-sided chest pain on arrival to the emergency department. Chest x-ray showed fourth and fifth right-sided rib fractures, with a hemopneumothorax on the right-hand side. A right-sided chest tube was placed in the emergency department, and the patient was admitted to the general surgery floor for further observation.
>
> BRIEF HOSPITAL COURSE: On hospital day #1, the patient's pain was controlled with oral pain medication. He was tolerating a regular diet. The patient was using his incentive spirometer appropriately and ambulating well. The following day, chest x-ray showed a larger pneumothorax, and the chest tube was placed to negative 40 suction. He was continued on his regular diet. Pain Management adjusted his pain medications throughout his hospital stay to make him comfortable. Chest tube was placed back to negative 20 suction on 11/09/2014, and put on waterseal the following day. The chest tube was able to be removed on 11/11/2014. Follow-up x-rays showed no appreciable pneumothorax. The patient was able to be discharged on that day, without any further need for an inpatient hospital stay. The patient's pain was controlled with oral medication and he was tolerating a regular diet, and he was ambulating very well. He was using his incentive spirometer appropriately and he was sent home with this device, _____ with breathing at home.

{¶ 18} 3. The hospital discharge summary states that relator was instructed to follow-up with Dr. Marley in one to two weeks.

{¶ 19} 4. Apparently, relator did follow-up with Dr. Marley on November 20, 2014.

{¶ 20} 5. On December 4, 2014, Dr. Marley completed a form provided by the Ohio Bureau of Workers' Compensation ("bureau"). The form is captioned "Physician's Report of Work Ability" and is designated by the bureau as a Medco-14.

{¶ 21} The Medco-14 asks the treating physician to indicate disability by marking a box beside the pre-printed statement: "Injured worker is temporarily not released to any work, including the former position of employment from (date): 11/5/2014 to 1/5/2015."

{¶ 22} Although Dr. Marley failed to mark the box, he indicated in the spaces provided that the disability period is from November 5, 2014 to January 5, 2015.

{¶ 23} 6. The industrial claim (No. 14-857779) is allowed for "non-displaced anterior 4th and 5th rib fracture, right."

{¶ 24} 7. It is undisputed that the last date that relator worked at Precision Excavating was the date of injury.

{¶ 25} 8. Earlier, as noted in the commission's orders at issue, Ms. Kendall, the controller for Precision Excavating, testified at hearing that relator called her on October 31, 2014 and stated that he was moving to Florida, and asked her what the procedures were for quitting his job. Ms. Kendall did not receive a written resignation from relator, but his last date of work was November 5, 2014.

{¶ 26} 9. The record contains the notarized statement of Rodney Myers who was relator's co-worker at Precision Excavating. Myers states:

> On Monday November 3, John Kline [sic] let me know that
> he was going to work two more weeks then was qitting [sic]
> work to go to Florida.

{¶ 27} 10. The record also contains the notarized statement of Dawn R. Withem, another co-worker of relator. Withem states: "When I took John Klein to the hospital on Wednesday, November 5th, 2014, he told me that he had recently turned his two week notice in to go to Florida to live with his mother."

{¶ 28} 11. The record contains chronological notations authored by relator's managed care organization's nurse, Lori Biddinger, R.N. On November 11, 2014, Biddinger noted that she had spoken with "Melissa" at Precision Excavating, and that Melissa had stated "there is light duty available and she can accommodate restrictions."

{¶ 29} 12. On November 13, 2014, Biddinger wrote: "[Injured Worker] stated he plans on moving to Florida 11/20/14. His mother lives there. His son is going to drive him there. He will ask Dr. Marley for a referral for a BWC certified doctor in Florida."

{¶ 30} 13. On November 21, 2014, Biddinger wrote that she had spoken to relator by telephone to give relator the name and telephone number of a bureau certified physician whose office is located in Bradenton, Florida.

{¶ 31} 14. On November 24, 2014, Biddinger indicated that relator "has relocated to Florida."

{¶ 32} 15. On December 30, 2014, relator moved for TTD compensation beginning November 6, 2014 based on the December 4, 2014 Medco-14 completed by Dr. Marley.

{¶ 33} 16. Following a February 18, 2015 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation for the closed period November 6 through November 19, 2014, but denying TTD compensation beginning November 20, 2014 based on a finding that relator had voluntarily abandoned his employment at Precision Excavating on November 20, 2014. The DHO's order explains:

> This Hearing Officer finds that Injured Worker voluntarily terminated his employment on or about 11/20/2014 for reasons unrelated to the injuries he sustained in this claim. This finding is based upon Injured Worker's testimony at today's hearing. Injured Worker testified that he had plans to move to Florida before his workplace accident on 11/05/2014. He stated that he was moving because the weather is better in Florida than in Ohio and there are more job opportunities in Florida. Injured Worker could not provide the actual date he moved to Florida. However, Bureau of Workers' Compensation notes dated 11/13/2014 state that Injured Worker informed them that he was moving to Florida on 11/20/2014. Further Ms. Kendall, the controller for the employer, testified that Injured Worker called her on 10/31/2014 and stated that he was moving to Florida and asked her what the proper procedures were for quitting his job. Ms. Kendall stated that she did not receive a written resignation from the Injured Worker and confirmed that the last day he worked for the named employer was 11/05/2014.
>
> This order is based on the MEDCO-14 filed on 12/04/2014 signed by Robert Marley, M.D.

{¶ 34} 17. Relator administratively appealed the DHO's order of February 18, 2015.

{¶ 35} 18. Following an April 21, 2015 hearing, an SHO issued an order that affirms the DHO's order of February 18, 2015.  The SHO's order explains:

> The Hearing Officer finds that the District Hearing Officer order issued 02/25/2015, is affirmed.
>
> The C-84 Request for Temporary Total Compensation filed by the Injured Worker on 12/30/2014, is granted to the extent of this order.
>
> As indicated in the District Hearing Officer's order the Injured Worker is to be granted the payment of temporary total compensation for a closed period from 11/06/2014 through 11/19/2014 inclusive.
>
> As indicated in the District Hearing Officer's order the Hearing Officer finds that the Injured Worker voluntarily terminated his employment with the instant Employer on 11/20/2014, for reasons unrelated to the injuries he sustained in this matter.
>
> The District Hearing Officer at her hearing indicated that at that time, when he was unrepresented, he indicated to her that he planned to move to Florida before his work place accident on 11/05/2014. At the District Hearing Officer hearing he stated that he was moving because of the weather is better in Florida and that his family was down there and also more job opportunities in that state.
>
> At the District Hearing Officer hearing, he indicated that he did not tell the Hearing Officer what was just stated and also did not tell the comptroller Ms. Kendall that he was moving to Florida, contrary to what Ms. Kendall indicated at the Staff Hearing Officer's hearing.
>
> M[s]. Kendall had indicated that she was called on 10/31/2014, by the Injured Worker, prior to the injury date of 11/05/2014, indicating that he was going to terminate his employment and asked the procedure on how to do that. The Injured Worker's last day worked was the date of injury 11/05/2014.
>
> The Hearing Officer finds that the Injured Worker's testimony that he did not inform the comptroller of the

Employer that he was going to quit his employment and move to Florida on a permanent basis is not well taken as the Hearing Officer was explicit in her indication of what the Injured Worker stated at hearing.

The Injured Worker's statements at the Staff Hearing Officer's hearing were not well taken and changed to an extent that the Staff Hearing Officer chose not to rely upon the Injured Worker's testimony.

This order granting limited payment of temporary total compensation is based on the MEDCO-14 Physician's Report of Work Ability dated 12/04/2014, by Robert Marley, M.D.

{¶ 36} 19. On May 28, 2015, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 21, 2015.

{¶ 37} 20. On June 13, 2015, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 38} 21. On September 29, 2015, relator, John Klein, filed this mandamus action.

Conclusions of Law:

{¶ 39} The issue is whether the commission abused its discretion in determining that relator voluntarily abandoned his employment with Precision Excavating on November 20, 2014 and, therefore, is ineligible for TTD compensation beginning November 20, 2014.

{¶ 40} Finding that the commission abused its discretion in determining that relator voluntarily abandoned his employment on November 20, 2014, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 41} *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, is dispositive, and requires that this court issue a writ of mandamus.

{¶ 42} In 2003, Tony A. Mayle injured his back while employed with Reitter Stucco, Inc. Over the next several months, Mayle's symptoms did not improve, and surgery was recommended. That operation was performed on July 12, 2004.

{¶ 43} After surgery, Mayle undertook physical therapy, and a work-conditioning program. Relevant documentation reveals that Mayle was a conscientious and dedicated

participant.  The documents indicate that Mayle's goal was to improve enough to return to his former position of employment at Reitter Stucco.  His vocational team, however, was unsure whether Mayle would ever be capable of performing the heavy physical demands of that job on a sustained basis.

{¶ 44} On April 15, 2005, Mayle was fired for comments he made about the company's president.  Prior to that time, Reitter Stucco had been paying him wages in lieu of temporary total disability compensation.  The payments stopped after the termination, prompting Mayle to file a motion with the commission for TTD compensation.

{¶ 45} A DHO denied Mayle's motion finding that Mayle's termination constituted a voluntary abandonment of the former position of employment under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995).  An SHO reversed, finding that Mayle was temporarily and totally disabled when he was fired, rendering *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996), not *Louisiana-Pacific*, controlling.  The commission affirmed that order.

{¶ 46} Reitter Stucco filed a complaint for a writ of mandamus in this court.  This court upheld the commission decision, and the company appealed as of right to the Supreme Court of Ohio.

{¶ 47} In affirming this court's judgment, the Supreme Court explained:

> *Pretty Prods.* was decided shortly after *Louisiana-Pacific*. In *Pretty Prods.*, we held that the character of the employee's departure -- i.e., voluntary versus involuntary -- is not the only relevant element and that the timing of the termination may be equally germane. In *Pretty Prods.*, we suggested that a claimant whose departure is deemed voluntary does not surrender eligibility for temporary total disability compensation if, at the time of departure, the claimant is still temporarily and totally disabled. [Citations Omitted.] Thus, even if a termination satisfies all three *Louisiana-Pacific* criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred.
>
> The present litigants treat the two cases as mutually exclusive, with the company urging that *Louisiana-Pacific* is dispositive and Mayle and the commission citing *Pretty Prods.* Yet *Louisiana-Pacific* and *Pretty Prods.* may each factor into the eligibility analysis. If the three requirements

> of *Louisiana-Pacific* regarding voluntary termination are not met, the employee's termination is deemed involuntary, and compensation is allowed. If the *Louisiana-Pacific* three-part test is satisfied, however, suggesting that the termination is voluntary, there must be consideration of whether the employee was still disabled at the date of termination. We thus take this opportunity to reiterate that *Louisiana-Pacific* and *Pretty Prods.* are not mutually exclusive and that they may both factor into the eligibility analysis.
>
> We affirm the judgment of the court of appeals, which held in favor of Mayle and the commission. No one disputes that Mayle was medically incapable of returning to his former position of employment at the time of his discharge. Mayle's eligibility for temporary total disability compensation accordingly remains intact.

*Id.* at 73.

{¶ 48} Here, analysis begins with the observation that the commission, through its hearing officer, relied on the December 4, 2014 Medco-14 report of Dr. Marley.  In his report, Dr. Marley certified that relator was temporarily unable to return to any work including the former position of employment for the period beginning the date of injury November 5, 2014 to January 5, 2015, a period of 90 days.

{¶ 49} While the commission relied on Dr. Marley's report to award TTD compensation for the period November 6 through November 19, 2014, it refused to grant compensation beyond November 19, 2014 because it determined that relator had voluntarily abandoned his employment on November 20, 2014.  Significantly, the commission did not end the award at November 19, 2014 due to any problem with Dr. Marley's report.

{¶ 50} Clearly, under *Reitter Stucco,* if relator remained temporarily and totally disabled on November 20, 2014, by law, he was unable to voluntarily abandon his employment at Reitter Stucco.

{¶ 51} Thus, this case hinges on the question of whether relator medically remained unable to return to his former position of employment beginning November 20, 2014.  The commission did not fully evaluate Dr. Marley's Medco-14 because it believed that relator was ineligible for TTD compensation as of November 20, 2014.

{¶ 52} On remand, if the commission determines that the medical evidence on which it relies establishes that relator remained unable to return to his former position of employment on November 20, 2014, it shall enter an order finding that relator did not voluntarily abandon his employment, and that he is entitled to further TTD compensation.  On the other hand, if, on remand, the commission determines that the medical evidence on which it relies establishes that relator was able to return to his former position of employment as of November 20, 2014, it shall enter an order that relator became ineligible for TTD compensation as of November 20, 2014.


/S/ MAGISTRATE
KENNETH W. MACKE


## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).