[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Klein v. Precision Excavating & Grading Co.,* Slip Opinion No. 2018-Ohio-3890.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3890

THE STATE EX REL. KLEIN, APPELLEE, *v*. PRECISION EXCAVATING & GRADING COMPANY ET AL.; INDUSTRIAL COMMISSION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Klein v. Precision Excavating & Grading Co.,* Slip Opinion No. 2018-Ohio-3890.]**

*Workers' compensation—When a claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, the claimant is no longer eligible for temporary-total-disability compensation, even if the claimant remains disabled at the time of his separation from employment—*State ex rel. Reitter Stucco, Inc., v. Indus. Comm. *and* State ex rel. OmniSource Corp. v. Indus. Comm. *overruled.*

(No. 2017-0589—Submitted February 13, 2018—Decided September 27, 2018.)

APPEAL from the Court of Appeals for Franklin County, No. 15AP-908, 2017-Ohio-1020.

_____

**FRENCH, J.**

{¶ 1} In this appeal, we consider whether an injured worker who voluntarily leaves his position of employment for reasons unrelated to his workplace injury is entitled to continued temporary-total-disability compensation. Appellant, Industrial Commission of Ohio, determined that appellee, John Klein, who sustained a workplace injury on November 5, 2014, voluntarily abandoned his employment at Precision Excavating & Grading Company ("Precision Excavating") on November 20, 2014, for reasons unrelated to his injury. On Klein's request for a writ of mandamus, the Tenth District Court of Appeals found *State ex rel. Reitter Stucco, Inc.*, *v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, to be dispositive and concluded that the commission abused its discretion in determining that Klein voluntarily abandoned his employment without determining whether Klein was medically capable of returning to work.

{¶ 2} *Reitter Stucco* and a similar case, *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, held that a claimant who voluntarily abandons his employment is entitled to temporary-total-disability compensation if he is medically incapable of returning to work at the time of the abandonment. With due respect for the principles of stare decisis, we conclude that it is time to overrule *Reitter Stucco* and *OmniSource* under the stringent three-part test in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

{¶ 3} Applying the longstanding principles of voluntary abandonment to Klein's claim for temporary-total-disability compensation, we reverse the judgment of the court of appeals and deny the writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

{¶ 4} Klein sustained injuries on November 5, 2014, while working for Precision Excavating. His workers' compensation claim was allowed for fractured ribs and traumatic hemopneumothorax. Robert A. Marley, M.D., his treating

physician, issued a report stating that Klein was temporarily unable to work from the date of the injury through January 5, 2015. The parties do not dispute that the last date Klein worked at Precision Excavating was November 5, 2014, the date of the injury.

{¶ 5} On November 13, 2014, Klein informed the Bureau of Workers' Compensation that he was moving to Florida on November 20, 2014. Although the exact date of his relocation to Florida is unclear from the record, by November 26, 2014, Klein had asked the bureau to send correspondence to an address in Longboat Key, Florida.

{¶ 6} Klein filed a request for temporary-total-disability compensation based on Dr. Marley's report. At a February 18, 2015 hearing before a district hearing officer, Klein testified that even before his injury, he had been planning to move to Florida for better weather and more job opportunities. Precision Excavating's controller also testified that Klein had informed her on October 31, 2014, that he was moving to Florida and inquired as to the proper procedures for quitting his job. She did not receive a written resignation from Klein but did confirm that Klein last worked at Precision Excavating on November 5, 2014.

{¶ 7} The record contains additional evidence that before the date of his injury on November 5, 2014, Klein had told others of his intention to move to Florida. A coworker attested in a notarized statement that on November 3, 2014, Klein had told him that he intended to quit his job in two weeks and move to Florida. Another coworker attested that when she took Klein to the hospital on November 5, 2014, Klein informed her that he had recently given his two-week notice and intended to move to Florida to live with his mother.

{¶ 8} After the hearing, the district hearing officer awarded Klein temporary-total-disability compensation for only the closed period of November 6, 2014, through November 19, 2014. The hearing officer concluded that Klein voluntarily terminated his employment on November 20, 2014, for reasons

unrelated to his workplace injuries and was therefore not eligible for temporary-total-disability compensation on or after that date.

**{¶ 9}** A staff hearing officer affirmed the district hearing officer's order. The Industrial Commission refused further appeals.

**{¶ 10}** Klein filed a complaint in mandamus in the Tenth District Court of Appeals, alleging that the commission abused its discretion when it limited his temporary-total-disability-compensation award to the period ending November 19, 2014.

**{¶ 11}** At the court of appeals, a magistrate relied on *Reitter Stucco* and concluded that if Klein remained medically unable to return to work on November 20, 2014, he was unable to voluntarily abandon his employment on that date. The magistrate determined that the commission had not evaluated Dr. Marley's opinion about whether Klein remained medically unable to return to work on that date. The magistrate recommended that the court issue a limited writ of mandamus returning the case to the commission with instructions to determine whether Klein was unable to return to his former position of employment on November 20, 2014, and if it determined that he was unable to return to work, to enter an order finding that Klein was entitled to further temporary-total-disability compensation.

**{¶ 12}** The court of appeals adopted the magistrate's decision and granted a limited writ of mandamus. 2017-Ohio-1020, 86 N.E.3d 1002, ¶ 14.

**{¶ 13}** This matter is before this court on the commission's direct appeal.

## ANALYSIS

**{¶ 14}** The purpose of temporary-total-disability compensation is to compensate an injured employee for lost earnings during a period of disability while an injury heals. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35. To qualify for temporary-total-disability compensation, a claimant must show that he or she is medically incapable

of returning to the former position of employment and that the industrial injury is the cause of the loss of earnings. *Id.*

{¶ 15} Ordinarily, when a claimant's voluntary actions, rather than his or her industrial injury, cause a loss of wages, that claimant is no longer eligible for temporary-total-disability compensation. *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 44, 517 N.E.2d 533 (1987).

{¶ 16} We have carved out an exception to this voluntary-abandonment rule—an exception that Klein relies on here. We have held that if a claimant is already disabled when the separation of employment occurs, he or she is not disqualified from receiving temporary-total-disability compensation. *Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, at ¶ 10; *OmniSource*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, at ¶ 10. In doing so, we construed *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), as requiring an inquiry into a claimant's physical capacity: "a claimant can abandon a former position of employment only if the claimant was physically capable of doing that job at the time of the alleged abandonment." *OmniSource* at ¶ 12, citing *Pretty Prods*. Even if the abandonment of employment was voluntary, we held, "there must be consideration of whether the employee was still disabled at the date of termination." *Reitter Stucco* at ¶ 11, citing *Pretty Prods*.

{¶ 17} Upon review now, we conclude that it is time to overrule *Reitter Stucco* and *OmniSource* under the three-part test set forth in *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. Both decisions were wrongly decided at the time, they defy practical workability, and abandoning them would not create an undue hardship for those who have relied upon them. *See id.* at paragraph one of the syllabus.

### *Reitter Stucco* **and** *OmniSource* **were wrongly decided**

{¶ 18} *Reitter Stucco* and *OmniSource* contradict a fundamental tenet of temporary-total-disability compensation: that the industrial injury must cause the

worker's loss of earnings. *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 35. "All forms of death and disability benefits provided by R.C. Chapter 4123," including temporary-total-disability compensation, "are intended to compensate for 'loss sustained on account of the injury.' " *Id.*, quoting R.C. 4123.54(A). For an injured worker to be eligible for compensation, "it must appear that, but for the industrial injury, the claimant would be gainfully employed." *Id.*

{¶ 19} As a corollary, when a claimant removes himself from employment for reasons unrelated to the work-related injury, he is no longer eligible for temporary-total-disability compensation. *Id*. at ¶ 38. In those circumstances, the voluntary abandonment—and not the injury—causes the loss of wages. *Id*. We have applied this logic whether the claimant's voluntary abandonment of his position resulted from termination from employment for the knowing violation of a written work rule that clearly defined a dischargeable offense, *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 650 N.E.2d 469 (1995), from incarceration, *Ashcraft*, 34 Ohio St.3d 42, 517 N.E.2d 533, or from retirement, *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140.

{¶ 20} And most importantly for the matter before us, we have concluded that an employee who quit his job for reasons unrelated to his workplace injury was ineligible for temporary-total-disability compensation. *State ex rel. McGraw v. Indus. Comm.*, 56 Ohio St.3d 137, 564 N.E.2d 695 (1990).

{¶ 21} *Reitter Stucco* and *OmniSource* marked a radical departure from this precedent. We held in both cases that even if a separation from employment satisfies all the criteria of voluntary abandonment, the claimant remains eligible for temporary-total-disability compensation if he or she is still disabled at the time of the separation. *Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, at ¶ 10; *OmniSource*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, at ¶ 10. This exception to the voluntary abandonment rule, however, has created at least

two unintended consequences: it immunizes claimants from the consequences of their own voluntary conduct and it authorizes compensation in scenarios for which temporary-total-disability compensation was not intended.

{¶ 22} We have defined temporary-total disability as "a disability which prevents a worker from returning to his former position of employment." *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630, 433 N.E.2d 586 (1982), syllabus. Accordingly, we have recognized that it would not serve the purpose of temporary-total-disability compensation to award compensation to a worker whose own actions, and not his workplace injury, have prevented his return to his former position of employment. *Ashcraft*, 34 Ohio St.3d at 43-44, 517 N.E.2d 533. When an employee voluntarily undertakes some action that precludes a return to employment, the employee is not entitled to temporary-total-disability compensation "because the purpose for which [temporary-total-disability compensation] was created * * * no longer exists." *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380, 732 N.E.2d 355 (2000); *see also McGraw* at 139 (worker who quit his job for reasons unrelated to injury was not entitled to compensation because "his own actions eliminated any opportunity for return").

{¶ 23} By authorizing compensation to workers who by their own actions have prevented their return to their former position of employment, *Reitter Stucco* and *OmniSource* contravene both our precedent and the purpose of temporary-total-disability compensation.

### *Reitter Stucco* and *OmniSource* defy practical workability

{¶ 24} Our subsequent attempts to clarify and distinguish *Reitter Stucco* and *OmniSource* have only muddied the waters and illustrate the unworkability of those decisions. We have attempted to limit the applicability of *Reitter Stucco* and *OmniSource* to cases involving employees who are discharged for misconduct, as opposed to cases involving employees who voluntarily quit or retire from employment. *State ex rel. Hildebrand v. Wingate Transport, Inc.*, 141 Ohio St.3d

533, 2015-Ohio-167, 26 N.E.3d 798, ¶ 23-24. In doing so, we have only made the law more confusing. As the Tenth District Court of Appeals noted in this case, "[I]t is difficult to determine which precedent should apply here." 2017-Ohio-1020, 86 N.E.3d 1002, ¶ 9.

{¶ 25} In effect, we have created two lines of precedent for voluntary abandonment. We have one set of rules for terminated employees. *See Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861; *OmniSource*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. And we have another set of rules for employees who voluntarily leave the workplace. *See Hildebrand*; *Pierron*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140. An injured employee who voluntarily retires, for example, cannot get temporary-total-disability compensation. *See Pierron* at ¶ 11. But an injured worker who is fired for violating a workplace rule can. *See Reitter Stucco* at ¶ 4, 12 (affirming reinstatement of compensation to claimant who was discharged two years after injury for making threats against his employer); *OmniSource* at ¶ 6-7, 13 (reinstating compensation to claimant terminated for failing to provide a valid commercial driver's license after conviction for driving under the influence).

{¶ 26} There is no logical distinction between discharge and voluntary resignation for purposes of temporary-total-disability compensation. Both constitute a departure from employment unrelated to the workplace injury. And both sever the causal connection between the industrial injury and the loss of earnings. It's time to get rid of this arbitrary distinction.

**Abandonment of *Reitter Stucco* and *OmniSource* would not impose undue hardship**

{¶ 27} Finally, abandoning *Reitter Stucco* and *OmniSource* would not jeopardize any reliance interests. Both cases involved claimants discharged from employment after a workplace injury. It is highly unlikely that an injured worker currently receiving temporary-total-disability compensation would instigate his

termination by violating a workplace rule based on the hope that he would continue to receive benefits under *Reitter Stucco* and *OmniSource*.

**{¶ 28}** To be sure, abandoning *Reitter Stucco* and *OmniSource* would impact future claimants who suffer an injury and then take voluntary action that precludes continued employment. But even after *Reitter Stucco* and *OmniSource*, we adhered to the longstanding rule that when a claimant chooses for reasons unrelated to his industrial injury not to return to his former position of employment, the claimant is considered to have voluntarily abandoned his employment and is no longer eligible for temporary-total-disability compensation. *State ex rel. James v. Wal-Mart Stores, Inc.*, 149 Ohio St.3d 700, 2017-Ohio-1426, 77 N.E.3d 952, ¶ 16, citing *Baker*, 89 Ohio St.3d 376, 732 N.E.2d 355; *Pierron*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, at ¶ 9. Eligibility for temporary-total-disability compensation has always depended on whether the separation from employment was injury-induced. *State ex rel. Lackey v. Indus. Comm.*, 129 Ohio St.3d 119, 2011-Ohio-3089, 950 N.E.2d 542, ¶ 11. Far from posing an undue hardship, overruling *Reitter Stucco* and *OmniSource* would restore consistency to our jurisprudence.

**{¶ 29}** For all these reasons, we overrule *Reitter Stucco* and *OmniSource* and hold that when a workers' compensation claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, he is no longer eligible for temporary-total-disability compensation, even if the claimant remains disabled at the time of his separation from employment.

### The scope of our holding

**{¶ 30}** As the concurring opinion aptly explains, the problems in *Reitter Stucco* and *OmniSourc*e arose from the following statement in *Pretty Prods*: " '[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.' " (Brackets sic.) *Pretty Prods.*, 77 Ohio St.3d at 7, 670

N.E.2d 466, quoting *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993). Our holding today forecloses any continued reliance on that statement in future temporary-total-disability cases. But we need not overrule *Pretty Prods.* in its entirety because its dispositive holding remains valid—a work-rule infraction may not constitute voluntary abandonment if an industrial injury precipitated that infraction. *Pretty Prods.* at 7-8.

{¶ 31} Abrogation of *Reitter Stucco* and *OmniSource* also does not require us to overrule the broad swath of cases the concurring opinion cites, including *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*"), and *State ex rel. Cordell v. Pallet Cos., Inc.*, 149 Ohio St.3d 483, 2016-Ohio-8446, 75 N.E.3d 1230.

{¶ 32} As the concurring opinion acknowledges, in *Gross II*, we did not apply the voluntary-abandonment exception set forth in *Reitter Stucco* and *OmniSource*. Rather, we relied on a long-standing principle of causation governing temporary-total disability: that an employee's departure from the workplace must be causally related to his injury. *Gross II* at ¶ 23, citing *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 46, 531 N.E.2d 678 (1988), and *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. We then held that a restaurant employee who sustained a workplace injury from improper use of a deep fryer was entitled to temporary-total-disability benefits because he was discharged as a result of his injury and not because of a work-rule violation. *Id.* at ¶ 24. *Reitter Stucco* and *OmniSource* did not affect our holding in *Gross II*.

{¶ 33} The voluntary-abandonment exception set forth in *Reitter Stucco* and *OmniSource* also had no dispositive effect on the outcome of two other cases cited in the concurring opinion. *See State ex rel. Schlegel v. Stykemain Pontiac Buick GMC Ltd.*, 120 Ohio St.3d 43, 2008-Ohio-5303, 896 N.E.2d 143, ¶ 17 (declining to hear claimant's arguments based on *Pretty Prods.* and *OmniSource* because they were not asserted in administrative proceedings); *State ex rel. Ellis*

*Super Valu, Inc. v. Indus. Comm*., 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 12 (invoking *OmniSource* only to explain that voluntary abandonment and the refusal of alternate employment are two different defenses to payment of temporary-total-disability).

{¶ 34} We also need not overrule *Cordell*. We concluded in that case that a worker who was terminated after his workplace injury for failing a post-accident drug test was entitled to temporary-total-disability benefits. *Cordell*, 149 Ohio St.3d 483, 2016-Ohio-8446, 75 N.E.3d 1230 at ¶ 34. We reached that holding by relying on two different lines of precedent. We applied *Reitter Stucco* to conclude that the worker did not voluntarily abandon his position, because he was medically incapable of returning to work at the time of his termination. *Id*. at ¶ 22, 36.

{¶ 35} But we also relied on the long-standing rule, as reiterated in *Gross II*, that an employee whose termination is causally related to his injury has not voluntarily abandoned his position. *Id.* at ¶ 33, citing *Gross II*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, at ¶ 23, *Rockwell*, 40 Ohio St.3d at 46, 531 N.E.2d 678, and *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. We then concluded that the worker's pre-injury work-rule violation did not sever the causal connection between his injury and loss of wages because he was not intoxicated or impaired at the time of the injury. *Id*. at ¶ 38. Rather, the injury resulted in the discovery of his work-rule violation. *Id.* at ¶ 36.

{¶ 36} Because our ultimate holding in *Cordell* relied on long-standing precedent unaffected by our abrogation of *Reitter Stucco*, we need not overrule *Cordell* here. To the extent that portions of our *Cordell* opinion rely on *Reitter Stucco*, those portions no longer hold any precedential value.

{¶ 37} And finally, we need not overrule *State ex rel. Luther v. Ford Motor Co., Batavia Transm. Plant*, 113 Ohio St.3d 144, 2007-Ohio-1250, 863 N.E.2d 151. In *Luther*, we issued a limited writ remanding the matter to the commission to determine (1) whether the claimant was already disabled when he was terminated

and (2) whether the claimant was fired for absenteeism induced by his industrial injury. *Id*. at ¶ 17-18, 20. To the extent that the first part of our remand order in *Luther* is inconsistent with our holding today, it no longer has any precedential value. The second part of our remand order, however, remains good law.

**Analysis of Klein's claim**

{¶ 38} We turn, then, to Klein's claim, to determine whether he voluntarily abandoned his position for reasons unrelated to his injury. To be entitled to extraordinary relief in mandamus, Klein must establish that he had a clear legal right to the relief he requested and that the Industrial Commission had a clear legal duty to provide it. *State ex rel. McKee v. Union Metal Corp*., 150 Ohio St.3d 223, 2017-Ohio-5541, 80 N.E.3d 491, ¶ 11. We will not issue a writ of mandamus unless the commission abused its discretion by entering an order not supported by some evidence in the record. *Id*.

{¶ 39} Voluntary abandonment of employment is primarily a question of intent that " 'may be inferred from words spoken, acts done, and other objective facts,' " and " '[a]ll relevant circumstances existing at the time of the alleged abandonment should be considered.' " (Brackets added.) *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381, 383, 544 N.E.2d 677 (1989), quoting *State v. Freeman*, 64 Ohio St.2d 291, 297, 414 N.E.2d 1044 (1980). The presence of that intent is a factual determination for the commission. *Id*.

{¶ 40} We conclude that Klein did not show that the commission abused its discretion in ordering Klein's temporary-total-disability payments to stop on November 19, 2014. The record contains some evidence supporting the commission's factual determination that on or about November 20, 2014, Klein voluntarily abandoned his employment for reasons unrelated to his injury.

{¶ 41} Before the district hearing officer, Klein admitted that even before his injury on November 5, 2014, he had been planning a move to Florida for better weather and more job opportunities. Precision Excavating's controller also

12

testified that Klein informed her on October 31, 2014, that he was moving to Florida and inquired as to the proper procedures for quitting his job. Klein's coworker attested that on November 3, 2014, Klein had told him that he intended to quit his job in two weeks and move to Florida. And yet another coworker attested that when she took Klein to the hospital on November 5, 2014, Klein informed her that he had recently given his two-week notice and intended to move to Florida to live with his mother.

**{¶ 42}** At the next hearing level, the staff hearing officer noted that Klein attempted to change his prior testimony that he intended to move to Florida on a permanent basis. The staff hearing officer, however, found Klein's changed testimony was "not well taken." The commission is "exclusively responsible for evaluating the weight and credibility of the evidence." *McKee*, 150 Ohio St.3d 223, 2017-Ohio-5541, 80 N.E.3d 491, at ¶ 10. We therefore defer to the commission's conclusion as to the credibility of Klein's testimony.

**{¶ 43}** We find that Klein's move to Florida, combined with all of the relevant circumstances and evidence demonstrating his intention to leave Precision Excavating permanently, constitutes a voluntary abandonment of his employment unrelated to his industrial injury. Our decision here does not stand for the proposition, as the concurring opinion suggests, that a relocation automatically constitutes voluntary abandonment. A determination of voluntary abandonment requires consideration of all relevant circumstances existing at the time of the alleged abandonment. *Diversitech*, 45 Ohio St.3d at 383, 544 N.E.2d 677. And the totality of Klein's statements and actions here demonstrate that even before his injury, Klein intended to leave his position of employment permanently. It is Klein's own actions, and not his workplace injury, that prevented his return to his former position of employment. *Accord Ashcraft*, 34 Ohio St.3d at 43-44, 517 N.E.2d 533.

**{¶ 44}** Consequently, Klein failed to demonstrate that he had a clear legal right to the relief requested and that the commission had a clear legal duty to provide that relief. *See McKee* at ¶ 11.

## CONCLUSION

**{¶ 45}** We reverse the judgment of the court of appeals and deny the requested writ of mandamus.

Judgment

reversed and writ denied.

O'CONNOR, C.J., and FISCHER and DEGENARO, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by O'DONNELL and DEWINE, JJ.

_____

**KENNEDY, J., concurring in judgment only.**

**{¶ 46}** I concur in reversing the judgment of the court of appeals and reinstating the order of appellant, Industrial Commission of Ohio, awarding appellee, John Klein, temporary-total-disability ("TTD") compensation only through the effective date of his resignation, when he voluntarily abandoned his employment with Precision Excavating & Grading Company. I also agree with the majority that our decisions in *State ex rel. Reitter Stucco, Inc., v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, and *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, were wrongly decided and should be overruled.

**{¶ 47}** I write separately, however, because the majority disregards "the classic admonition to begin at the beginning," *Vanston Bondholders Protective Commt. v. Green*, 329 U.S. 156, 169, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In leaping to overrule *Reitter Stucco* and *OmniSource*, it skips over the root of the problem and does not acknowledge that their faulty analysis originated in 1996, when this court decided *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5,

670 N.E.2d 466 (1996). At the same time, it does nothing to address how this faulty analysis continues to infect our recent decisions, including *State ex rel. Cordell v. Pallet Cos., Inc.*, 149 Ohio St.3d 483, 2016-Ohio-8446, 75 N.E.3d 1230, and *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*"). All four of these decisions—*Reitter Stucco*, *OmniSource*, *Cordell*, and *Gross II*—involve TTD claimants who were terminated for misconduct after they had been injured on the job. And all four cases focus on the timing of the termination, not the voluntariness of the injured worker's conduct. It is curious that the majority chooses not to overrule them all.

{¶ 48} Although it purports to clarify the law, the majority's analysis only perpetuates the confusion created by *Pretty Prods.*, on which numerous decisions from this court and the Tenth District Court of Appeals have relied for the proposition that " '[a] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal,' " *id*. at 7, quoting *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993).

{¶ 49} The court in *Pretty Prods.*, however, inadvertently discussed caselaw applicable to permanent-total-disability ("PTD") compensation, which continues until death and therefore cannot be terminated by the voluntary abandonment of employment, in the context of a case concerning TTD compensation, which we have long recognized can be terminated if the worker voluntarily abandons employment. In doing so, it erroneously suggested that TTD compensation may be available even when the claimant's voluntary conduct has severed the causal connection between the workplace injury and the loss of wages.

{¶ 50} The majority seems willfully ignorant of the confusion pervading our cases. It must understand that *Pretty Prods*. is the source of that confusion, yet it fails to discuss that decision and instead singles out two of our decisions applying *Pretty Prods*.—*Reitter Stucco and OmniSource*—as "mark[ing] a radical

departure" from what the majority apparently believes is an otherwise consistent and coherent line of precedent. Majority opinion at ¶ 21.

{¶ 51} But in asserting that *Reitter Stucco* and *OmniSource* are outliers, and in purporting to wipe the slate clean by overruling only those two decisions, the majority exacerbates the incoherence in the law by leaving in place other decisions relying on *Pretty Prods.* for an exception to the voluntary-abandonment rule. For example, as recently as 2016 in *Cordell*, we reaffirmed the vitality of *Pretty Prods.* and its progeny and held that a claimant was entitled to TTD compensation when he was terminated for violating his employer's zero-tolerance drug policy, because he "was medically incapable of returning to work *when he was terminated.*" (Emphasis added.) 149 Ohio St.3d 483, 2016-Ohio-8446, 75 N.E.3d 1230, ¶ 36. The majority fails to overrule *Cordell*, even though the court of appeals relied on it in this case and Klein argues that we should apply it here.

{¶ 52} Perhaps the majority believes that *Cordell*, a five-to-two decision released only 18 months ago, is too fresh a decision to reconsider now and that overruling *Cordell* today would appear to have been occasioned by a change in this court's membership. However, "[o]verrulings of precedent rarely occur without a change in the Court's personnel. The only distinctive feature here is that the overruling would follow not long after the original decision. But that is hardly unprecedented." *South Carolina v. Gathers*, 490 U.S. 805, 824, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) (Scalia, J., dissenting). Notably, the *Galatis* test for overruling a prior decision counsels that we consider reliance interests and " 'practical real-world dislocations' " before overturning our caselaw. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 58, quoting *Robinson v. Detroit*, 462 Mich. 439, 466, 613 N.W.2d 307 (2000). As Justice Scalia explained,

16

> [T]he respect accorded prior decisions increases, rather than decreases, with their antiquity, as the society adjusts itself to their existence, and the surrounding law becomes premised upon their validity. The freshness of error not only deprives it of the respect to which long-established practice is entitled, but also counsels that the opportunity of correction be seized at once, before state and federal laws and practices have been adjusted to embody it.

*Gathers* at 824 (Scalia, J., dissenting). We should therefore overrule bad precedent at the earliest opportunity to avoid reliance on it, especially as here, when we are overruling two similar decisions.

{¶ 53} Perhaps the majority justifies its approach as a more limited, incremental step in overruling bad precedent. But as the majority recognizes, *State ex rel. Hildebrand v. Wingate Transport, Inc.*, is on point and controls the outcome here, because both cases involve injured workers who voluntarily abandoned their employment by resigning. *See* 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, ¶ 22. In contrast, *Reitter Stucco* and *OmniSource* apply to claimants who were terminated from their positions for violating workplace rules and therefore are distinguishable on their facts. The narrowest approach would simply apply *Hildebrand* and leave the decision to overrule *Reitter Stucco* and *OmniSource* for another day.

{¶ 54} Moreover, the majority's logic is curious, because if we applied *Cordell*'s analysis today, as the court of appeals did and as Klein urges, he would be entitled to the additional compensation he seeks. Pursuant to *Cordell*, an injured worker cannot voluntarily abandon employment if medically incapable of returning to work at the time of the separation from employment. *Cordell* at ¶ 29. But according to the majority, Klein voluntarily abandoned his employment when he moved to Florida—even though he was medically incapable of returning to his

position at that time. As the Tenth District Court of Appeals explained in this case, "To treat [Klein] differently from *Cordell* would result in a precedent that claimants who violate workplace policies prior to injury are treated more favorably than claimants who did not." 2017-Ohio-1020, 86 N.E.3d 1002, ¶ 13. Yet in denying Klein additional compensation, the majority does not overrule *Cordell*, and its attempt to sever *Reitter Stucco* and *OmniSource* from *Cordell*'s analysis is unpersuasively revisionist and cannot save its holding. It is simply not possible to square the majority's rhetoric criticizing the "radical" and "arbitrary" holdings in *Reitter Stucco* and *OmniSource*, majority opinion at ¶ 21, 26, with the majority's continued adherence to decisions like *Cordell* that uphold the *Pretty Prods.* exception to the voluntary-abandonment rule.

{¶ 55} The judicial branch exercises "neither Force nor Will but merely judgment." *The Federalist No. 78* at 523 (Cooke Ed.1961). The authority of our decisions therefore extends only so far as they are coherent and make sense. "The requirement that they do so is the only thing that prevents this Court from being some sort of [seven]-headed Caesar, giving thumbs-up or thumbs-down to whatever outcome, case by case, suits or offends its collective fancy." *Dickerson v. United States*, 530 U.S. 428, 455, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (Scalia, J., dissenting). But because the majority's opinion leaves *Hildebrand* and *Cordell* in place, courts will be able to determine future claimants' entitlement to TTD compensation only by picking and choosing the precedent that supports the desired outcome.

{¶ 56} All the members of this court are aware of the disjunction and contradiction that now exists in our caselaw, and it is our responsibility and duty to correct it now. *Pretty Prods.* should stand only for the proposition that when the workplace injury itself causes the separation from employment—such as when an injured worker violates the employer's absenteeism policy because of the injury and is discharged—the separation from employment is not voluntary and does not

disqualify the worker from receiving TTD compensation. Decisions like *Cordell* that distort and misapply this narrow holding should be immediately and expressly overruled along with *Reitter Stucco* and *OmniSource*, or the court should overrule nothing at all.

**{¶ 57}** Here, because Klein's resignation broke the causal connection between his workplace injury and his wage loss, the commission did not abuse its discretion in limiting the award of TTD compensation to the period prior to the date his resignation took effect.

**The Voluntary-Abandonment Rule**

**{¶ 58}** We first adopted the voluntary-abandonment rule in 1987 in *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 517 N.E.2d 533 (1987). Tracing its history in *State ex rel. McCoy v. Dedicated Transport, Inc.*, we explained that the rule emanates from the principle that "[a]ll forms of death and disability benefits provided by R.C. Chapter 4123 are intended to compensate 'for loss sustained on account of the injury.' " 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35, quoting R.C. 4123.54(A). We recognized that "a causal relationship must exist between the employee's industrial injury and the loss that the requested benefit is designed to compensate." *Id.*

**{¶ 59}** TTD compensation is available "when an industrial injury prevents a claimant from performing the duties of his position of employment," *State ex rel. Floyd v. Formica Corp.*, 140 Ohio St.3d 260, 2014-Ohio-3614, 17 N.E.3d 547, ¶ 13, and is "designed 'to compensate an injured employee for the loss of earnings which he incurs while the injury heals,' " *McCoy* at ¶ 35, quoting *Ashcraft* at 44. To qualify for TTD compensation, the injured worker is required to show that "a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed." *Id.*

**{¶ 60}** We have therefore explained that the causal connection between the workplace injury and the loss of wages is severed by the worker's departure from employment for reasons unrelated to that injury. *State ex rel. Jacobs v. Indus. Comm.*, 139 Ohio St.3d 86, 2014-Ohio-1560, 9 N.E.3d 999, ¶ 18; *McCoy* at ¶ 38. An injured worker is not entitled to TTD compensation when he or she voluntarily abandons employment by quitting, *State ex rel. James v. Wal-Mart Stores, Inc.*, 149 Ohio St.3d 700, 2017-Ohio-1426, 77 N.E.3d 952, ¶ 18, resigning on two weeks' notice, *State ex rel. Bilaver v. Indus. Comm.*, 131 Ohio St.3d 132, 2012-Ohio-26, 961 N.E.2d 675, ¶ 5, retiring, *State ex rel. Corman v. Allied Holdings, Inc.*, 132 Ohio St.3d 202, 2012-Ohio-2579, 970 N.E.2d 929, ¶ 6-7, being incarcerated, *Ashcraft* at 44-45, or being terminated from employment for violating work rules, *State ex rel. Parraz v. Diamond Crystal Brands, Inc.*, 141 Ohio St.3d 31, 2014-Ohio-4260, 21 N.E.3d 286, ¶ 15-16.

**{¶ 61}** But in *Pretty Prods.*, we inadvertently confused the law by stating that " '[a] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.' " 77 Ohio St.3d at 7, 670 N.E.2d 466, quoting *Brown*, 68 Ohio St.3d at 48, 623 N.E.2d 55.

**{¶ 62}** We borrowed this language from *Brown*, a decision explaining that when a worker is *permanently* and *totally* disabled, the worker is incapable of returning to work and therefore can never voluntarily abandon it, *Brown* at 48. It is true that in both *Pretty Prods.* and *Brown* we considered whether injured workers had voluntarily abandoned their employment. But in *Brown*, we explained that in contrast to an award of TTD compensation, which can be terminated if the worker voluntarily abandons employment, PTD compensation cannot be terminated once awarded because those benefits continue until the worker's death. *Id*. at 47-48. We concluded,

> Clearly, once a worker has been declared permanently and totally disabled he or she is incapable of returning to work. As such, *a claimant who has a permanent and total disability is incapable of abandoning a position* because that position, in effect, does not exist. Indeed, a claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.

(Emphasis added.) *Id.* at 48.

{¶ 63} We therefore took the language from *Brown* out of its context when we reiterated it in *Pretty Prods.*, a case involving a temporary and total disability, not a permanent and total one. And importantly, we did not decide *Pretty Prods.* by considering whether the injured worker was "already disabled" at the time of her separation from employment, but rather, we focused on whether her termination for violating a work rule regarding absenteeism supported a finding of voluntary abandonment, explaining that if her absences were causally related to her workplace injury, then she had not voluntarily abandoned her employment. *Id.* at 7-8. However, because we could not tell from the commission's order why it determined that the worker had not voluntarily abandoned her employment, we remanded the matter to the commission to clarify its findings. *Id.* at 8.

{¶ 64} Our decision in *Pretty Prods.* should not be construed as standing for the proposition that an injured worker is immune from the consequences of his or her voluntary acts that cause a separation from employment just because at that time, the worker lacked the physical capacity for work. Rather, *Pretty Prods.* states simply that separation from employment—such as a discharge for violating an absenteeism policy—is not voluntary when it is caused by or is "due to industrial injury." 77 Ohio St.3d at 7, 670 N.E.2d 466.

**{¶ 65}** Nonetheless, later decisions discussing *Pretty Prods.* have focused on its broad language quoting *Brown*, to the exclusion of its actual holding. For example, in *Reitter Stucco*, the injured worker had been paid wages in lieu of TTD compensation and later "was fired for comments made about the company's president." 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, at ¶ 4. The employer stopped paying the wages, the commission awarded TTD compensation, and the court of appeals affirmed that order. Citing *Pretty Prods.*, we indicated that even when the employee's voluntary conduct leads to the termination of employment, the claimant "does not surrender eligibility for temporary total disability compensation if, at the time of departure, the claimant is still temporarily and totally disabled." *Reitter Stucco* at ¶ 10. And even though it was apparent in *Reitter Stucco* that the claimant's discharge was not causally related to his workplace injury, we affirmed the judgment of the court of appeals, explaining that the injured worker could not voluntarily abandon his employment until he was physically capable of returning to work. *Id*. at ¶ 12.

**{¶ 66}** Similarly, in *OmniSource*, we concluded that an injured worker receiving TTD compensation did not voluntarily abandon his employment when he was terminated from his job as a truck driver for violating a work rule requiring him to have a valid commercial driver's license—which he could not obtain due to his multiple drunk-driving convictions. 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, at ¶ 10. Again, notwithstanding the fact that his termination was not causally related to his workplace injury, we stated that "[a] claimant who is already disabled when terminated is not disqualified from temporary total disability compensation," *id*., citing *Pretty Prods.* and *Brown*, and we concluded that the worker could not abandon his employment when he was not physically capable of doing his job at that time, *OmniSource* at ¶ 12.

**{¶ 67}** In *Hildebrand*, we considered whether an injured worker who had "voluntarily quit his job following a disagreement with his employer that had

nothing to do with his injury" remained eligible for TTD compensation. 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, at ¶ 22. Relying on *Pretty Prods.*, the worker maintained that he could not have abandoned his former position because he was unable to perform his job duties at the time that he quit. *Hildebrand* at ¶ 14. We determined that his resignation broke the causal connection between his injury and his loss of wages, thereby precluding TTD compensation. *Id*. at ¶ 22.

{¶ 68} We then sought to distinguish *Pretty Prods.*, *Reitter Stucco*, and *OmniSource*. First, we noted that in those cases, "each injured worker was already receiving temporary-total-disability compensation when terminated from employment and had therefore already demonstrated that he or she was disabled as a result of an industrial injury." *Hildebrand* at ¶ 23. But that is a distinction without a difference; there apparently was no dispute that the injured worker in *Hildebrand* was not capable of returning to his former position, and in any case, whether an employee has been awarded compensation says nothing about whether the employee voluntarily abandoned employment. Second, we indicated that *Pretty Prods.* and its progeny were distinguishable because they involved work-rule violations, stating that "*Pretty Prods.* has not been considered in the context of an injured worker who voluntarily quit for reasons unrelated to the allowed claim." *Hildebrand* at ¶ 24. However, in *Hildebrand*, we failed to explain why the two types of voluntary abandonment—voluntary resignations and voluntary acts of misconduct resulting in termination—should be treated differently. In neither situation can it be said that "the claimant's actual loss of earnings results from the industrial injury because the claimant would have been working but for the injury," *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 38.

{¶ 69} As *Hildebrand* shows, our attempts to distinguish *Pretty Prods.* and its progeny have become strained and muddled, and it is time to dispel the chaos that has arisen from our disjointed application of *Pretty Prods.* to situations not contemplated by its narrow holding. I would not continue the attempt to distinguish

SUPREME COURT OF OHIO

these cases "to the vanishing point, creating an illusion of certainty in the law while leaving only a shadow of an ancient landmark," *United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 406, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965) (Douglas, J., dissenting). Rather, "[a]s far as I am aware, the public is not under the illusion that we are infallible. I see little harm in admitting that we made a mistake * * *." *Dickerson*, 530 U.S. at 464, 120 S.Ct. 2326, 147 L.Ed.2d 405 (Scalia, J., dissenting).

{¶ 70} It would be far more straightforward to apply *Pretty Prods.* to only those TTD cases with similar facts, i.e., those cases in which a workplace injury causes the separation from employment, such as when the worker is unable to comply with an absenteeism rule because of the workplace injury and is discharged for that reason. In those situations, abandonment of employment is involuntary and TTD compensation is available. And I would also clarify that when a worker voluntarily abandons employment for reasons unrelated to the workplace injury— for example, by quitting, resigning on two weeks' notice, retiring, being incarcerated, or committing misconduct that results in termination—the causal connection between the injury and the wage loss is severed and the worker is no longer entitled to TTD compensation, regardless of whether the worker is capable of returning to work. In those circumstances, it is the voluntary act of the employee and not the injury that causes the loss of wages.

{¶ 71} The majority agrees that *Reitter Stucco* and *OmniSource* were wrongly decided, and it would apply the three-part test set forth in *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, to overrule them. But *Reitter Stucco* and *OmniSource* are not the only two cases in which we have indicated that a claimant must be physically capable of employment in order to voluntarily abandon it. In my view, if we are going to apply the *Galatis* test and overrule precedent, we should take this opportunity to definitively settle the law. After all, we cited *Pretty Prods.* or its progeny with approval in *State ex rel. Schlegel v.*

*Stykemain Pontiac Buick GMC, Ltd.*, 120 Ohio St.3d 43, 2008-Ohio-5303, 896 N.E.2d 143, ¶ 17, *State ex rel. Luther v. Ford Motor Co., Batavia Transm. Plant*, 113 Ohio St.3d 144, 2007-Ohio-1250, 863 N.E.2d 151, ¶ 17, and *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 12.

{¶ 72} As previously discussed, the court continued its misapplication of the voluntary-abandonment rule in *Cordell*, holding that an injured worker who was rightfully terminated from employment for violating his employer's zero-tolerance policy on drug use was nonetheless entitled to TTD compensation because he "was medically incapable of returning to work when he was terminated." 149 Ohio St.3d 483, 2016-Ohio-8446, 75 N.E.3d 1230, at ¶ 36. The worker's termination for smoking marijuana, not his injury, had plainly caused his loss of wages; as I explained in my dissent in *Cordell*, "the connection between the industrial injury and the loss of wages was severed by Cordell's preinjury use of marijuana," *id*. at ¶ 70 (Kennedy, J., dissenting). In fact, the court emphasized that "[t]o be clear, [the employer] had the right to terminate [the worker] for violating one of its work rules." *Id.* at ¶ 36. But that did not matter to the court, because "at the time of his termination, he was temporarily and totally disabled." *Id*. *Cordell* therefore shares the same fatal flaw that I have identified in *Reitter Stucco* and *OmniSource*. In each of these cases, the injured worker's voluntary acts resulted in his discharge, which caused his loss of wages; the workplace injury did not, regardless of the timing of the job abandonment.

{¶ 73} And the same holds true for *Gross II*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162. In that case, the injured worker had been terminated for repeatedly violating workplace-safety rules; despite multiple warnings, he opened a cooker that he had improperly filled with water, resulting in severe burns to himself and two coworkers. The Industrial Commission terminated his TTD compensation, but the court of appeals, citing *Pretty Prods*., granted a writ of

mandamus reinstating compensation. Initially, we reversed, concluding that this case was not "within the ambit of *Pretty Prods.*" because the injured worker had voluntarily abandoned his employment by willfully ignoring repeated warnings. 112 Ohio St.3d 65, 2006-Ohio-6500, 858 N.E.2d 335, ¶ 30.

**{¶ 74}** However, we granted reconsideration, vacated our prior decision, and affirmed the judgment of the court of appeals. *Gross II* at ¶ 26. Although the court in *Gross II* did not cite *Pretty Prods.* or its progeny in deciding that a worker does not voluntarily abandon employment and forfeit TTD compensation when the violation of a workplace-safety rule results in an occupational injury, it too disregarded the lack of a causal connection between the injury and the loss of wages. As in *Cordell*, the court did not question that the employer had the right to terminate the employee for violating the safety rule—that is, the injury plainly did not cause the loss of wages—but rather, it concluded that the termination was *related* to the injury because the injury coincided with the rule violation. *Gross II* at ¶ 24.

**{¶ 75}** Then-Justice O'Connor dissented, explaining that "[n]othing in our past decisions has suggested that the voluntary-abandonment doctrine may be applied only in cases involving postinjury conduct." *Id.* at ¶ 52 (O'Connor, J., dissenting). She pointed out, "The artificial distinction between an injury that arises before a violation of a safety rule and one that occurs contemporaneously with the violation, or one that arises after the violation has been completed, is a dubious one in the law." *Id.* (O'Connor, J., dissenting). And she also correctly noted that "a myopic focus on the temporal proximity of the misconduct and the injury blinds the majority to the important rationale that underlies the voluntary-abandonment rule: 'discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character.' " *Id.* at ¶ 70 (O'Connor, J., dissenting), quoting *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118, 121, 623 N.E.2d 1202 (1993).

{¶ 76} *Reitter Stucco*, *OmniSource*, *Cordell*, and *Gross II* all focus on the *timing* of the job abandonment rather than on whether it was voluntary and therefore severed the causal connection between the worker's injury and wage loss. But pursuant to R.C. 4123.54(A), an injured worker "is entitled to receive the compensation for loss sustained on account of the injury." The timing of the abandonment is irrelevant, because regardless of whether the injured worker abandons employment prior to, concurrently with, or after the injury, the worker is not entitled to TTD compensation when the injury itself does not cause the claimed loss of wages.

{¶ 77} All these decisions have taken *Pretty Prods.* out of context. All these decisions confuse the law. All these decisions permit TTD compensation for injuries that did not cause the claimed loss of wages. Unlike the majority's approach, I would overrule all of them and any other decisions employing their same flawed rationale.

### Klein Voluntarily Abandoned His Employment

{¶ 78} In this case, the record reveals that Klein voluntarily abandoned his employment when he tendered his resignation prior to his workplace injury. This is demonstrated by his admissions and actions, which are all consistent with the decision to resign to move to Florida. Importantly, a party's admissions are not hearsay and may be offered against that party as substantive evidence of the matter asserted. Evid.R. 801(D)(2).

{¶ 79} The controller at Precision Excavating testified that Klein called her on October 31, 2014, told her that he was moving to Florida, and asked "what the proper procedures were for quitting his job." Coworker Rodney Myers averred that on November 3, 2014, Klein told him that "he was going to work two more weeks then was quitting work to go to Florida." When Dawn Withem took Klein to the hospital on November 5, 2014, he told her that "he had recently turned his two week

notice in to go to Florida to live with his mother." During proceedings before the commission, a district hearing officer wrote,

> Injured Worker testified that he had plans to move to Florida before his workplace accident on 11/05/2014. He stated that he was moving because the weather is better in Florida than in Ohio and there are more job opportunities in Florida. Injured Worker could not provide the actual date he moved to Florida. However, Bureau of Workers' Compensation notes dated 11/13/2014 state that Injured Worker informed them that he was moving to Florida on 11/20/2014.

{¶ 80} The standard of review controls the outcome of this case. To be entitled to a writ of mandamus, Klein has the burden to "demonstrate that the commission abused its discretion by entering an order not supported by some evidence in the record." *State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, 80 N.E.3d 491, ¶ 11. And here, there is some evidence—Klein's own admissions and actions—supporting the commission's finding that Klein voluntarily abandoned his employment by resigning for reasons unrelated to his workplace injury, with an effective date sometime between November 13 and November 19, 2014. "The commission is the evaluator of evidentiary weight and credibility, and neither we nor the court of appeals can substitute our judgment for the commission's in making those determinations." *State ex rel. Scioto Metals, Inc. v. Indus. Comm.*, 92 Ohio St.3d 232, 232, 749 N.E.2d 741 (2001).

{¶ 81} Our decision in *Bilaver* is on point. In that case, the injured worker made plans to travel abroad to Croatia and he resigned on two weeks' notice when his employer denied him a leave of absence to go. Before his last day of work, he was injured on the job. Nonetheless, he still traveled to Croatia, and he

subsequently sought TTD compensation. We explained that the worker had voluntarily abandoned his employment and therefore was not entitled to TTD compensation. 131 Ohio St.3d 132, 2012-Ohio-26, 961 N.E.2d 675, at ¶ 5. He had given his employer two weeks' notice, and we rejected the argument that he had rescinded that notice in a letter that "[did] not indicate directly or implicitly that [the worker] wished to keep his job." *Id.*

{¶ 82} *Bilaver* supports the conclusion that Klein voluntarily abandoned his employment. Both workers voluntarily resigned their positions for reasons unrelated to their injuries. Both workers were injured on the job prior to their last day of work. And both workers followed through on their plans to leave the state— conduct inconsistent with an intention to maintain employment. Klein's own admission to a coworker that "he had recently turned his two week notice in to go to Florida to live with his mother" is substantive evidence that he turned in his two weeks' notice, Evid.R. 801(D)(2), and there is no evidence that Klein ever withdrew it. Then he moved out of state: the record demonstrates that within weeks of his accident, he informed the Bureau of Workers' Compensation that he had changed his address to Long Boat Key, Florida, and he began seeing a Florida doctor.

{¶ 83} The majority focuses on Klein's move rather than on his resignation. But Klein's relocation to Florida is merely *the reason why* he abandoned his employment; it is his resignation on two-weeks' notice that constitutes the voluntary abandonment of his job. After all, something had to terminate Klein's employment, and no one argues that Precision Excavating discharged him for failing to return to work. Further, moving is not necessarily a voluntary abandonment of a position; the majority points to nothing in the workers' compensation statutes that precludes an injured worker from moving out of state to live with family while recuperating from a workplace injury. And by focusing on the overt act of relocating to Florida, the majority either suggests that the

admissions against interest that Klein made to coworkers are not sufficient proof that he resigned or it creates a requirement of subsequent action following a resignation in order to effectively abandon employment. Either way, the majority's analysis injects more confusion and uncertainty into our caselaw.

{¶ 84} Equally problematic is the majority's failure to overrule our recent decision in *Cordell*, 149 Ohio St.3d 483, 2016-Ohio-8446, 75 N.E.3d 1230. There, the court explained that a worker does not voluntarily abandon his or her position if the worker is medically incapable of returning to work at the time of the separation from employment. *Id*. at ¶ 29, 36. According to the majority, Klein abandoned his employment when he moved to Florida on or about November 20, 2014, but at that time, he was medically incapable of returning to work. If *Cordell* remains good law, its holding would allow Klein to recover the additional compensation he seeks. The majority, however, refuses to overrule *Cordell*, and rather than take the opportunity to clarify the law, the majority only confuses it further.

**Conclusion**

{¶ 85} At common law, a worker had to prove fault on the part of his or her employer in order to recover for injuries sustained in the course of employment and the action was subject to defenses such as assumption of risk, contributory negligence, and the fellow-servant rule. *Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 118-119, 748 N.E.2d 1111 (2001). Due to these defenses, workers often went uncompensated for their injuries, and in response, the General Assembly enacted this state's first workers' compensation laws in 1911 to establish a state insurance fund benefiting injured workers. *Id*.; *Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624, 643, 576 N.E.2d 722 (1991) (Holmes, J., dissenting). The next year, in 1912, the people of this state adopted Article II, Section 35 of the Ohio Constitution to specifically empower the General Assembly to enact workers' compensation legislation and provide for a statewide fund to compensate injured

workers. *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 14; *Brady* at 643-644 (Holmes, J., dissenting). An amendment to Article II, Section 35 adopted in 1923 established the exclusivity of the workers' compensation system for recovery for workplace injuries, granting complying employers immunity from common-law remedies. *Brady* at 644 (Holmes, J., dissenting).

{¶ 86} The General Assembly exercised the authority granted by Article II, Section 35, and workers' compensation law in Ohio now represents

> "a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability."

*Arrington* at ¶ 19, quoting *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982).

{¶ 87} This case impacts almost every citizen of this state. All employers are required to pay into the state fund unless they are self-insured, and all employees benefit from the workers' compensation laws. And there were approximately 100,000 state-fund claims filed each year in 2015, 2016, and 2017. Bureau of Workers' Compensation, *Fiscal Year 2017 Report* at 7, *https://www.bwc.ohio.gov/downloads/blankpdf/AnnualReport.pdf* (accessed Aug. 7, 2018).

{¶ 88} The three-member Industrial Commission and 85 hearing officers heard a total of 113,846 disputed claims at all adjudicatory levels (district hearing officer, staff hearing officer, deputy, and commission) in 2017. *Id*. at 54-55. And in reviewing these claims, the commission continues to rely on *Pretty Prods.* and

its progeny as establishing an exception to the voluntary-abandonment rule. *E.g.*, *In re Claim No. 16-342839*, 2017 WL 8223527, *2 (Indus. Comm. May 12, 2017) ("A discharge from a position an Injured Worker is medically prevented from pursuing at the time of his discharge does not act as voluntary abandonment of the former position of employment under the rule of [*Pretty Prods.*]"); *In re Claim No. 16-811544*, 2016 WL 11000568, *3 (Indus. Comm. Nov. 22, 2016) ("the Injured Worker was already disabled when the separation occurred, so that he could not have voluntarily abandoned his employment and *Pretty Products* should apply").

**{¶ 89}** Decisions like these will continue to misapply *Pretty Prods.* and its progeny as an exception to the voluntary-abandonment rule. Eventually, we will have to rectify our decision today, and it is better to do it now with an express and categorical overruling rather than through the piecemeal approach adopted by the majority. Where the law is uncertain, there is no law. *See State ex rel. Rosett & Bicking v. Boring*, 15 Ohio 507, 516 (1846). Our cases ought to foster confidence and predictability in the law, not thwart it. Employers and employees need that confidence and predictability in deciding whether to terminate employment, attorneys need it in advising clients, and administrative officers need it in adjudicating claims. Nothing short of a thorough repudiation of *Pretty Prods.* and its progeny will avoid the inevitable waste of time and expense of litigation that will result when parties contest which of our contradictory strands of precedent applies in their case.

**{¶ 90}** Clarifying the law makes this a simple case. The commission did not abuse its discretion in determining that Klein voluntarily abandoned his employment by resigning on two weeks' notice, and there is sufficient evidence supporting an award of TTD compensation through the effective date of his resignation. And because the record does not show exactly when his resignation was effective but permits the finding that it was sometime between November 13 and November 19, 2014, it was not an abuse of discretion to award compensation

through November 19, 2014. Accordingly, I concur in the court's judgment reversing the judgment of the court of appeals.

O'DONNELL and DEWINE, JJ., concur in the foregoing opinion.

_____

Richard L. Williger Co., L.P.A., and Richard L. Williger, for appellee.

Michael DeWine, Attorney General, and Patsy A. Thomas, Assistant Attorney General, for appellant.

_____