[Cite as *State ex rel. Quest Diagnostics, Inc. v. Indus. Comm.*, 2022-Ohio-1093.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Quest Diagnostics, Inc., | : | |
| Relator, | : | |
| v. | : | No. 20AP-246 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on March 31, 2022

**On brief:** *Dinsmore & Shohl LLP,* and *Brian P. Perry*, for relator.

**On brief:** *Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent for Industrial Commission of Ohio.

**On brief:** *Stanley R. Jurus Law Office,* and *Robert Bumgarner,* for respondent Quintina L. Stone.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Quest Diagnostics, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the request of respondent, Quintina L. Stone ("claimant"), for temporary total disability ("TTD") compensation, and to reinstate the order of the staff hearing officer ("SHO") that denied claimant's motion for TTD compensation.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate found that the Supreme Court of Ohio's decision in *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890 is the controlling precedent and that the commission made a clear mistake of law when it misapplied *Klein*.

{¶ 3}   As the magistrate explained, *Klein* reasserted the fundamental tenant that a claimant is ineligible for TTD compensation if the claimant's workplace injury did not cause the loss of earnings.  Therefore, "when a claimant removes [herself] from employment for reasons unrelated to the work-related injury [she] is no longer eligible for temporary-total-disability compensation."  *Id.* at ¶ 19.  In the context of voluntary abandonment, an employee who quits her job for reasons unrelated to her workplace injury is ineligible for TTD compensation because in that circumstance, the injury did not cause the loss of earnings.  *Id.* at ¶ 20.  *Klein* requires this result even if the claimant desired to retain her position and never intended to leave the workforce.

{¶ 4}   Because the commission misinterpreted and misapplied the holding in *Klein*, the magistrate found that it committed an error of law.  The magistrate further concluded that because the commission's factual findings established that the claimant resigned her position for reasons unrelated to her workplace injury, she was ineligible for TTD compensation.  For these reasons, the magistrate has recommended that we grant relator's request for a writ of mandamus.

{¶ 5}   Both the claimant and the commission have filed objections to the magistrate's decision.  We first address the claimant's objections.

{¶ 6}   In her first objection, the claimant argues that the magistrate erred by not considering the question of intent in determining whether the claimant voluntarily removed herself from her position of employment.  Specifically, the claimant contends that the magistrate did not consider the fact that she had intended to remain working for relator at one of its California locations until she found out shortly before her scheduled move that she needed a California certification.  Because she lacked that certification, the claimant could not immediately transfer to one of relator's California locations.  Consequently, the claimant had to decide whether to remain in Ohio in her current position with relator or

resign her position and accompany her husband to California. Given the short timeframe, the claimant felt she was compelled to resign her position with relator because she understandably wanted to be with her husband who was starting a new job in California.

{¶ 7} Contrary to the claimant's contention, the magistrate did consider the claimant's intent. The magistrate examined the claimant's reasons for resigning her position and simply found that those reasons were not causally related to her workplace injuries. The claimant would have been confronted with this same decision regardless of whether she had suffered a workplace injury. Without a causal connection between the claimant's workplace injury and her reasons for resigning her position, the claimant is ineligible for TTD compensation. *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, at ¶ 19-20. Although the claimant's reasons for quitting her job and moving to California with her husband are very understandable, those reasons are completely unrelated to her workplace injuries. Accordingly, the claimant is ineligible for TTD compensation, and we overrule the claimant's first objection.

{¶ 8} In her second objection, the claimant argues that the magistrate erred by substituting his own factual determination for those of the commission. We disagree.

{¶ 9} The question of intent for purposes of voluntary abandonment is a factual determination for the commission. Nevertheless, there must be some evidence to support that determination. Here, there is no evidence that the claimant left her position for reasons related to her workplace injury. As noted by the magistrate, there is no dispute about the circumstances that led up to the claimant's decision to resign her position. She had desired to transfer to another position at one of relator's locations in California and she had received assurance from relator that such a transfer was possible. When the claimant and relator found out a few days before the claimant's scheduled move that such a transfer was not possible because of California's certification requirements, she had to decide whether to stay in Ohio in her current position, or resign her position and move with her husband to California. She made the decision to resign her position. Those were factual determinations made by the commission. Based on those findings, the magistrate determined as a matter of law that the commission misapplied *Klein* because those factual determinations demonstrate that the claimant resigned her position for reasons unrelated to her injury. Therefore, she was ineligible for TTD compensation. The magistrate made a

legal determination based on *Klein*—not a factual determination. Therefore, we overrule the claimant's second objection.

{¶ 10} In the commission's sole objection, it argues that "[t]he magistrate erred in disregarding the claimant's intent, reevaluating the evidence presented to the commission, and finding the facts in *Klein* analogous to the facts in this case." (Commission's Objs. to Mag.'s Decision at 2.) For the reasons previously discussed in overruling the claimant's objections, we disagree.

{¶ 11} Again, the magistrate did not ignore or disregard the claimant's reasons for abandoning her employment with relator. Quite the contrary, the magistrate accepted the commission's factual determinations and applied the legal analysis required by *Klein*. Because the facts here established that the claimant resigned her position for reasons unrelated to her workplace injury, she was ineligible for TTD compensation, even though her reasons for resigning her position were very understandable. None of the equitable reasons identified by the commission are causally related to the claimant's workplace injury. As noted in *Klein*, it is "a long-standing principle of causation governing temporary-total disability: that an employee's departure from the workplace must be causally related to [her] injury." *Id*. at ¶ 32.

{¶ 12} We recognize that in *Klein*, the claimant had expressed his clear intentions to leave his job permanently and to move to Florida prior to the date of his injury. In contrast, here the claimant had desired to keep her employment with relator by transferring to one of relator's California locations. But those factual distinctions do not negate the underlying causation requirement that is the foundation for the analysis in *Klein*. Although the claimant may have felt forced to resign her position due to the circumstances and time frame that confronted her, none of those circumstances are related to her workplace injury. The magistrate did not disregard the claimant's intent or reevaluate the evidence. Rather, the magistrate simply applied *Klein* to the undisputed facts. Therefore, we overrule the commission's sole objection.

{¶ 13} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law

contained therein.  In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus granted.*

BEATTY BLUNT and MENTEL, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Quest Diagnostics, Inc., | : | |
| Relator, | : | |
| v. | : | No. 20AP-246 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 10, 2021

*Dinsmore & Shohl LLP, Brian P. Perry,* and *Christen S. Hignett,* for relator.

*Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent for Industrial Commission of Ohio.

*Stanley R . Jurus Law Office,* and *Robert Bumgarner,* for respondent Quintina L. Stone.

IN MANDAMUS

**{¶ 14}** Relator, Quest Diagnostics, Inc. ("employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that granted the request of respondent Quintina L. Stone ("claimant") for temporary total disability ("TTD") compensation, and to reinstate the order of the staff hearing officer ("SHO") denying claimant's motion for TTD compensation.

Findings of Fact:

{¶ 15} 1. On October 6, 2018, claimant sustained an injury in the course of her employment as a phlebotomist when she fell off a ladder. Her workers' compensation claim was allowed for the following conditions: strain muscle, tendon right shoulder rotator cuff; contusion right upper arm; contusion right shoulder; and supraspinatus/infraspinatus tears right rotator cuff.

{¶ 16} 2. In early 2018, claimant's husband was notified by the company he worked for that he would be reassigned to work in California. Claimant communicated this information to her supervisor, DeNora Carlisle, in February or March 2018, and indicated that she would like to continue employment with one of employer's locations in California after they moved. In May or June 2018, claimant and her supervisor discussed the transfer of claimant's husband, and claimant indicated she would not know until September or October 2018. On September 13, 2018, her husband's company informed him that he was to report for work in California on October 29, 2018. On October 3, 2018, claimant completed several requests to be transferred to one of employer's California locations, and gave them to Carlisle.

{¶ 17} 3. After her injury on October 6, 2018, claimant did not work for four days, and she then took off five days for a preplanned vacation that had been scheduled prior to her injury. She returned to light-duty work on October 22, 2018.

{¶ 18} 4. On October 8, 2018, Matthew Bridger, M.D., provided claimant with work restrictions which were set to expire on October 31, 2018.

{¶ 19} 5. On October 23, 2018, claimant visited Dr. Bridger, who issued a report in which he indicated that claimant would be moving to California this week, and recommended an MRI, follow-up care in California, and continued restrictions. Claimant received an MRI the next day, on October 24, 2018.

{¶ 20} 6. On October 24, 2018, after her supervisor, Carlisle, learned that claimant was planning to move to California on October 27, 2018, she contacted claimant, and the two discussed her requests to transfer to one of employer's California locations. Carlisle contacted employer's recruiter in California, and Carlisle and claimant learned for the first time that claimant would have to be certified in California before transferring to a position in California.

{¶ 21} 7. On October 26, 2018, claimant e-mailed a resignation letter to Carlisle. In the e-mail, claimant indicated she was resigning because she was moving to California.

{¶ 22} 8. On October 27, 2018, claimant moved permanently to California.

{¶ 23} 9. On March 9, 2019, claimant obtained her phlebotomist certification in California, although she never communicated such to Carlisle.

{¶ 24} 10. On June 17, 2019, claimant filed a request for TTD compensation beginning on October 27, 2018, to continue upon submission of proof of disability due to the allowed conditions in the claim.

{¶ 25} 11. On August 28, 2019, a district hearing officer ("DHO") held a hearing on claimant's request for TTD compensation.

{¶ 26} 12. On September 4, 2019, the DHO issued an order denying claimant's request for TTD compensation, finding the following: (1) TTD compensation is not payable based on the injured worker's voluntary removal from her position of employment with the employer; (2) claimant's original reason for relocating was to be with her spouse, and while she requested a transfer to a job in California with the same employer, no transfer was approved; (3) claimant also learned prior to her transfer she would not be able to perform the job she was seeking due to the lack of appropriate certification; (4) regardless, claimant still chose to relocate and resigned from her employment; (5) although claimant may not have been aware of the certification issue until immediately prior to her move, she should have been aware she had not ever been formally approved for any relocation; (6) even facing a situation where it seemed fairly certain she would not be able to continue in any similar position with the employer, claimant still chose to resign and go through with her relocation; (7) ultimately, it was claimant's decision to leave her position of employment with employer, and regardless of whether she intended to return to with this employer, her decision to no longer be employed after October 26, 2018 was hers; and (8) based on her voluntary removal from her employment with the employer, TTD compensation is denied.

{¶ 27} 13. On September 4, 2019, claimant filed an appeal from the DHO's order.

{¶ 28} 14. On October 22, 2019, an SHO held a hearing on claimant's appeal.

{¶ 29} 15. On October 25, 2019, the SHO issued an order denying the request for TTD compensation, finding the following: (1) TTD compensation is precluded because claimant voluntarily resigned from her position of employment; (2) although claimant's

testimony was credible that she had no intent to abandon the workforce, the fact remains that there was no guarantee of a job transfer with the employer, and there was no job offer; (3) at that point, when claimant decided to move to California, her options were either to stay behind in Columbus and continue working until she received certification in California and a job offer by her employer or to resign her position so that she could be with her husband in California; (4) claimant's resignation was for personal reasons—to be with her husband; (5) although her reason for resignation was understandable, it is nonetheless a personal decision of claimant's own volition to resign her position; and (6) because her voluntary removal from her position of employment, TTD compensation is denied.

{¶ 30} 16. On November 6, 2019, claimant filed an appeal from the SHO's order. On November 13, 2019, the commission refused the appeal.

{¶ 31} 17. On November 18, 2019, claimant filed a request for reconsideration of the SHO's October 25, 2019, order that denied her motion for TTD compensation.

{¶ 32} 18. On December 17, 2019, the commission issued an interlocutory order in which it accepted the request for consideration.

{¶ 33} 19. On January 14, 2020, the commission held a hearing on continuing jurisdiction and claimant's request for TTD compensation.

{¶ 34} 20. On February 22, 2020, the commission issued an order in which it found the following: (1) claimant had met her burden of proving the October 25, 2019, SHO order contains a clear mistake of law, in that the SHO misapplied *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, in finding voluntary abandonment; and (2) the commission exercises continuing jurisdiction to correct the error; (3) claimant's November 18, 2019, request for reconsideration is granted; (4) claimant's November 6, 2019, appeal from the October 25, 2019, SHO order is granted; (5) the October 25, 2019, SHO order is vacated; (6) claimant's June 17, 2019, request for TTD compensation is granted; (7) *Klein* is factually distinguishable from the present case because, in the present matter, claimant, unlike the injured worker in *Klein*, had expressed her desire to transfer within the company and received assurances from her supervisor that a transfer was possible, prior to sustaining her injury; (8) claimant submitted her transfer forms before her injury, but she was not told by the employer until approximately three days before her planned move that she needed separate certification in California in order

to work as a phlebotomist for the employer in that state; (9) claimant justifiably relied on statements made by the employer that she would be able to transfer to a position in California; (10) claimant reasonably expected, but for her injury, she would not be out of a job; (11) voluntary abandonment is primarily a question of intent that may be inferred from words spoken, acts alone, other objective facts, and all relevant circumstances existing at the time of the alleged abandonment; (12) it is clear that claimant's intent was to maintain employment with the employer, through a transfer within the company to a phlebotomist position in California; (13) the totality of the claimant's statements and actions demonstrate it was never her plan to abandon the workforce; (14) further evidence of claimant's intentions not to abandon the workforce is the fact that claimant obtained her California certification as a phlebotomy technician on March 9, 2019, although she has not been able to return to work in this capacity because of her injuries in this claim; (15) for these reasons, claimant did not voluntarily remove herself from her former position of employment and, thus, she is entitled to receive TTD compensation for the allowed conditions; and (16) the commission relies on the October 8 and October 23, 2019, MEDCO-14s submitted by Dr. Bridger; the February 8, March 14, May 2, and June 18, 2019, MEDCO-14s submitted by Larry Nicholson, M.D.; claimant's testimony; and claimant's April 9 and August 15, 2019, affidavits.

{¶ 35} 21. On March 5, 2020, the employer filed a request for reconsideration of the commission's February 22, 2020, order.

{¶ 36} 22. On March 31, 2020, the commission denied the employer's request for reconsideration.

{¶ 37} 23. On April 27, 2020, the employer filed a complaint for writ of mandamus, requesting that this court vacate its order that granted claimant TTD compensation, and reinstate the order of the SHO denying claimant's motion for TTD compensation.

{¶ 38} 24. The magistrate informally delayed a decision in this case until the Tenth District Court of Appeals released two decisions potentially impacting this case, *State ex rel. Walmart, Inc. v. Hixson*, 10th Dist. No. 19AP-323, 2021-Ohio-3802, and *State ex rel. Ohio State Univ. v. Pratt*, 10th Dist. No. 19AP-603, 2021-Ohio-3420.

Conclusions of Law and Discussion:

{¶ 39} The magistrate recommends that this court grant the employer's request for a writ of mandamus.

{¶ 40} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 41} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 42} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A) contains a clear and broad grant of continuing jurisdiction to the commission. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 15. However, that jurisdiction is conditioned on specific criteria: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶ 43} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum

medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 44} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 45} In *Hixson*, this court discussed the evolution of the voluntary-abandonment analysis in TTD compensation cases. This court found that the amended provisions in R.C. 4123.56(F) did not apply retroactively to the case. This court held in *Hixson* that R.C. 4123.56(F), as amended by H.B. No. 81, does not apply to TTD compensation awards in which both the injury and a final adjudication by the commission occurred before the effective date of the new law. This court went on to find the most recent Supreme Court of Ohio case, *Klein*, decided September 27, 2018, applied to the present analysis to ascertain whether the commission abused its discretion in granting TTD compensation.

{¶ 46} In *Klein*, the claimant suffered an industrial accident on November 5, 2014, and a physician's report indicated he was unable to work from that date through January 5, 2015. The claimant requested TTD compensation. The claimant testified before the DHO that he had been planning to move to Florida prior to the injury, he had told others that he planned to move to Florida prior to the injury, and claimant informed the employer that he was moving to Florida on October 31, 2014, nearly one week before the injury. The DHO granted claimant's TTD compensation claim for the closed period of November 6 through 19, 2014, finding that claimant voluntarily terminated his employment on November 20, 2014, for reasons unrelated to the workplace injuries. The order was affirmed by the SHO,

and the commission refused additional appeals. Upon a writ of mandamus, this court concluded that, because claimant was medically unable to return to work, he was unable to voluntarily abandon his employment on that date.

{¶ 47} The Supreme Court, overruling aspects of prior case law, reversed this court's decision, reasserting the fundamental tenet of eligibility for TTD compensation that the injury must cause the claimant's loss of earnings. The court in *Klein* explained that "when a claimant removes himself from employment for reasons unrelated to the work-related injury, he is no longer eligible for temporary-total-disability compensation." *Id.* at ¶ 19, citing *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 38. The court further explained that, "In those circumstances, the voluntary abandonment—and not the injury—causes the loss of wages." *Id.* Thus, "an employee who quit[s] his job for reasons unrelated to his workplace injury [i]s ineligible for temporary-total-disability compensation." *Id.* at ¶ 20, citing *State ex rel. McGraw v. Indus. Comm.*, 56 Ohio St.3d 137 (1990). "[I]t would not serve the purpose of temporary-total-disability compensation to award compensation to a worker whose own actions, and not his workplace injury, have prevented his return to his former position of employment." *Id.* at ¶ 22, citing *State ex rel. Ashcraft v. Indus. Comm. of Ohio*, 34 Ohio St.3d 42, 43-44 (1987). The court in *Klein* emphasized that the pertinent issue is whether the claimant abandoned his previous position with the employer of record in the claim, not whether the claimant intended to abandon the workforce entirely. *See Id.* at ¶ 29 (finding that when a workers' compensation claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, he is no longer eligible for TTD compensation, even if the claimant remains disabled at the time of his separation).

{¶ 48} This court recently analyzed *Klein* in *Pratt*. In *Pratt*, the claimant submitted her resignation to the employer on June 20, 2017, effective July 5, 2017. After she submitted her resignation but before the effective date of resignation, the claimant sustained a workplace injury and never returned to work for the employer. The claimant was granted TTD compensation, but the employer subsequently filed a motion to terminate TTD. The DHO granted the motion to terminate, finding that all TTD amounts paid for the period after the claimant's resignation letter date of June 20, 2017, were improperly paid. The claimant submitted a copy of an employment agreement between the claimant and a new

employer, which was dated June 28, 2017. On the claimant's appeal before the SHO, the SHO vacated the DHO's order and granted TTD, finding that the employment offer from the new employer demonstrates that the claimant did not intend to voluntarily abandon the workforce when she announced her resignation from employment with the employer on June 20, 2017. The employer eventually filed a mandamus action in this court, and the matter was heard before a magistrate. The magistrate issued a decision, in which he found the following, in pertinent part: (1) pursuant to *Klein*, the claimant's physical capacity to work and her intent to resume work with another employer are irrelevant to the voluntary abandonment determination because *Klein* requires the commission to consider only whether the claimant has voluntarily abandoned her former position, and not whether she has removed herself from the workforce generally; (2) *Klein* repeatedly and expressly refers to abandonment of the previous position held with the employer that is subject to the claim, without reference to any intent to abandon the workforce entirely; (3) the commission abused its discretion when it considered the claimant's continuing physical limitations and employment prospects and awarded TTD to the claimant for the period after the effective date of her voluntary resignation; and (4) it is recommended that a writ of mandamus issue ordering the commission to vacate its order awarding TTD compensation after July 5, 2017, and enter an order awarding such compensation only up to that date.

{¶ 49} Upon objections, this court affirmed the magistrate's interpretation of *Klein*. The court noted several factual similarities between *Klein* and the case before it and concluded that, under *Klein*, the claimant in *Pratt* was foreclosed from receiving TTD compensation after she had voluntarily abandoned her position on July 5, 2017. The court rejected the commission's contention that the claimant did not voluntarily abandon her position on July 5, 2017. The court also rejected the commission's contention that the claimant did not voluntarily abandon the workforce based upon the employment offer, and found that was not the test. Instead, under *Klein*, a court must look at whether the claimant voluntarily removed herself from her former position of employment, even if the claimant remains disabled at the time of her separation from employment. The court found that the claimant voluntarily removed herself from her former position, despite her injury at the time of separation from employment. The court explained that, in both *Klein* and the case before it, the industrial injury was not the cause of the worker's loss of earnings but, instead,

a voluntary decision to leave their respective places of employment. The court found that the magistrate's decision accurately reflected the analysis in *Klein* and applied the phrase "former position of employment" as intended. The court concluded that, under *Klein*, employment benefits cannot be provided to a claimant that voluntarily removed herself from her former position of employment for reasons unrelated to the workplace injury.

{¶ 50} In the present case, the employer presents two arguments. The employer first argues that the commission improperly exercised continuing jurisdiction when it granted a hearing on the issue of TTD based upon a clear mistake of law. The employer next argues that the SHO correctly applied *Klein*, and the commission misapplied that controlling decision. Because our determination of the employer's second argument as to the merits of the commission's order requires the granting of a writ, we address the employer's second argument first and find the first argument moot for purposes of this decision.

{¶ 51} With respect to its second argument, the employer argues that the present case is identical to the situation in *Klein* in all relevant aspects. The employer asserts that the commission fabricated a distinction by focusing on claimant's desire to continue working at a California location, as evidenced by her transfer requests. The employer points out that the SHO and DHO properly focused on claimant's intent with regard to her resignation and found claimant requested a transfer within the company prior to her injury, there was never any guarantee of a job in California, no job with the employer had been offered in California, claimant could have chosen to remain at her Columbus job in a light-duty capacity, she made a personal choice to move to California to be with her husband, and the discovery that a California-specific certification was required for her to be considered for a transfer position was completely unrelated to her work injury. The employer asserts that the evidence was irrefutable that claimant had intended to move to California with her husband long before she was injured at work, and her inability to continue working for the employer was not related to her work injury but, instead, was a personal, voluntary choice.

{¶ 52} The magistrate agrees with the employer's position. The commission's determination that the SHO made a clear mistake of law is based on an incorrect interpretation of *Klein*. The commission's determination clearly controverts our decision in *Pratt*. As this court explained in *Pratt*, the court in *Klein* held that a claimant that

voluntarily abandoned his/her employment for reasons unrelated to the injury is ineligible for TTD compensation. Here, claimant communicated to her supervisor in February or March 2018, that her husband would be transferring to California, and she would be moving with him. Claimant again communicated with her supervisor in May or June 2018 about the date for her husband's transfer. On September 13, 2018, the employer for claimant's husband informed him that he was to report for work in California on October 29, 2018, and claimant completed several requests for transfer on October 3, 2018, and gave them to her supervisor. She was injured on October 6, 2018. Claimant returned to light-duty work on October 22, 2018, and spoke with her supervisor on October 24, 2018, about her plan to move to California on October 27, 2018. After learning on October 24, 2018, that she would be unable to transfer due to her lack of a special California certification, claimant e-mailed a letter of resignation to her supervisor, explaining that she was resigning because she was moving to California.

{¶ 53} Thus, it is clear from the facts in this case that claimant voluntarily removed herself from her former position of employment. Although the commission relied upon the facts that claimant intended to remain working for the current employer in one of its California locations, she reasonably relied upon the employer's representations that she would be able to continue employment with the same employer in California, and that she was essentially "forced" to resign after discovering the special California certification requirements, in the end, she voluntarily chose to abandon her employment with the employer so that she could move to California because her husband was transferring there, and not because of her work injury. Although this analysis seems unforgiving, and even the employer acknowledges that claimant's resigning to move to California with her husband is understandable, the straightforward test enunciated in *Klein* and acknowledged by this court in *Pratt* unfortunately leads to some harsh results. As we emphasized in *Pratt*, *Klein* requires the commission to consider only whether the claimant has voluntarily abandoned her former position, and, in the present case, claimant voluntarily chose to leave her former position to move to California with her husband. Employment benefits cannot be provided to claimant when she voluntarily removed herself from her former position of employment for reasons unrelated to the workplace injury.

{¶ 54} Furthermore, as explained in *Pratt*, any evidence that claimant did not intend to voluntarily abandon the entire workforce when she resigned was irrelevant to the voluntary-abandonment determination under *Klein*. The commission here made a finding that the totality of the claimant's statements and actions demonstrate it was never her plan to abandon the workforce, as evidenced by the fact that claimant obtained her California certification as a phlebotomy technician on March 9, 2019, after moving to California. However, the court in *Klein* made clear that the test for voluntary abandonment does not involve a question of whether the claimant had any intent to abandon the workforce entirely but, rather, only whether the claimant abandoned her previous position held with the employer that is subject to the claim for reasons unrelated to her workplace injury.

{¶ 55} For these reasons, the magistrate concludes that claimant's loss of earnings was not caused by her industrial injury but, instead, by a voluntary decision to leave her former place of employment. The commission's February 22, 2020, order finding the SHO's order contained a clear mistake of law was based upon an erroneous interpretation of the standard set forth in *Klein*.

{¶ 56} Therefore, it is the magistrate's decision and recommendation that a writ of mandamus issue ordering the commission to vacate its order awarding TTD compensation to claimant, and enter an order denying such compensation.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).